UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUELINA PEÑA, Individually and as Independent Administrator of the Estate of RICARDO MUÑOZ, Deceased, | ) ) ) ) | Court No. |
| Plaintiff, | ) ) | **COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS AND WRONGFUL DEATH** |
| vs. | ) ) ) | **JURY TRIAL DEMANDED** |
| CITY OF LANCASTER, a municipal corporation; JARRAD BERKIHISER *in his individual and official capacity as Chief of Police for the* CITY OF LANCASTER; KARSON ARNOLD, *in his individual and official capacity as police officer for* the CITY OF LANCASTER; COUNTY OF LANCASTER, PENNSYLVANIA; UNKNOWN POLICE OFFICERS | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |

## <u>INTRODUCTION</u>

On September 13, 2020, Defendants responded to a mental-health crisis call by shooting and killing Ricardo Muñoz ("Ricardo"), a young man who police knew to be suffering from mental health issues, including schizophrenia and bipolar disorder. Defendants killed Ricardo in front of his mother, after he had descended the steps of his mother's front porch, without first attempting any de-escalation techniques. On the day of the shooting, Ricardo's family had requested help first by dialing crisis intervention, then by dialing a non-emergency police number, and finally, at the direction of the Defendants, by dialing 911. Despite Ricardo's well-known history of mental-health issues and documented repeated calls from his family to Defendant police department in the months and years before this incident, Defendants failed to respond in a manner that would have

ensured Ricardo's wellbeing. Ricardo had not committed any crimes at the time his family sought emergency services.

Upon arrival at the Muñoz residence, the responding police officer, Defendant KARSON ARNOLD ("ARNOLD"), failed to follow proper procedures and techniques intended to safely respond to Ricardo without the use of lethal force. Defendant ARNOLD unjustifiably shot and killed Ricardo. While it is true that Ricardo exited his mother's home with a knife in his hand, Defendant ARNOLD at no point made any attempts to use his taser and, against all legitimate police training, instead escalated the situation through his threatening confrontation of Ricardo, who ran down the steps of his mother's home, and not at Defendant ARNOLD. As shown on the video of the shooting, Defendant ARNOLD shot Ricardo twice, causing his hand to involuntarily rise, along with the knife in it, as he fell forward, and in the direction of Defendant ARNOLD. Although Ricardo already had been neutralized by the two initial shots, Defendant ARNOLD unjustifiably fired two more bullets into Ricardo. Thereafter, Defendants, including ARDNOLD and UNKNOWN POLICE OFFICERS, failed to provide, and in fact affirmatively intervened to prevent, Ricardo from receiving emergency medical assistance to save his life.

## JURISDICTION AND VENUE

1.     This action arises under Title 42 of the United States Code, § 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, §§ 1331 and 1343. The unlawful acts and practices alleged herein occurred in the City of Lancaster, County of Lancaster, Pennsylvania, which is within this judicial district.

2.     Venue is proper in this District under Title 28 of the United States Code, § 1931(b). The parties reside, or at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claims occurred in this judicial district.

2

## PARTIES

3.      Ricardo was a 27-year-old Hispanic man with a medical diagnosis of psychotic disorder, paranoid schizophrenia, catatonic schizophrenia, and other persistent mood disorders.

4.      Ricardo was unmarried and without issue. Ricardo was a qualified individual with a recognized disability protected from discrimination pursuant to 42 U.S. Code, § 12132.

5.      Plaintiff, MIGUELINA PEÑA, is and was at all times herein mentioned a citizen of the United States residing in the City of Lancaster in Pennsylvania. She is Ricardo's biological mother and Administrator of his intestate Estate.

6.      Miguelina is the only Administrator of Ricardo's Estate and the only party of interest in the instant action pursuant to 42 Pa.C.S. § 8302.

7.      Defendant CITY OF LANCASTER ("CITY") is a municipal corporation, duly organized and existing under the laws of the Commonwealth of Pennsylvania.

8.      Under its authority, Defendant CITY operates the Lancaster Police Department. Defendant CITY is being sued under 42 U.S.C. § 1983 (*Monell*) based on its policies, customs and widespread practices that were the driving force behind the alleged constitutional violations. Defendant CITY is also being sued under Pennsylvania state law with liability for the torts of its employees pursuant to a *respondeat superior* theory.

9.      At all times relevant, Defendant JARRAD BERKIHISER ("BERKIHISER") was employed by defendant CITY as Chief of Police for CITY and was acting under the color of law in the course and scope of his employment. He is being sued in his official capacity as Chief of Police for CITY.

10.    Defendant BERKIHISER was personally on notice of the unconstitutional deficiencies in Defendant CITY's policies, practices, and training regarding the use of force and police response to mentally impaired individuals.

11.    Nevertheless, Defendant BERKIHISER with deliberate indifference failed to correct said unconstitutional deficiencies.

12.    Upon information and belief, Defendant ARNOLD was the officer who shot and killed Ricardo. (Despite multiple attempts to obtain more particular information regarding the identity of the officer involved in the shooting, Defendant COUNTY (hereinbelow identified) and Defendant CITY have denied Plaintiff access to this information.)

13.    At all times mentioned herein, Defendant ARNOLD was employed by Defendant CITY as a police officer. He is being sued under the Fourth Amendment of the U.S. Constitution individually and in his official capacity as a police officer for CITY.

14.    Defendant ARNOLD was present at the scene and used excessive force unrelated to a legitimate law enforcement purpose and with reckless disregard for Ricardo's rights under the Fourth Amendment.

15.    By engaging in the conduct described herein, Defendant ARNOLD acted under the color of law and in the course and scope of his employment with CITY.

16.    By engaging in the conduct described herein, Defendant ARNOLD exceeded the authority vested in him as a police officer under the U.S. Constitution and as a police officer employed by Defendant CITY.

17.    Defendant COUNTY OF LANCASTER ("COUNTY") is duly organized and existing under the laws of the Commonwealth of Pennsylvania.

4

18.     Defendant COUNTY manages and operates the dispatch and 911 call center that received a call from Ricardo's family seeking help to deal with Ricardo's mental health crisis on September 13, 2020.

19.     Defendant COUNTY was responsible for evaluating the nature of the calls placed to its call center and for routing the calls accordingly.

20.     Before September 13, 2020, Defendant COUNTY had coordinated police interventions when Ricardo's family had requested help during other mental-health crises.

21.     Defendant COUNTY failed to provide Ricardo's family with appropriate information on how to handle their request for medical help.

22.     Defendant COUNTY also failed to coordinate an appropriate tactical response that did not involve lethal force.

### STATEMENT OF FACTS

**Defendant Shot Plaintiff without Justification**

23.     On September 13, 2020, at around 4:00 p.m., Defendant ARNOLD responded to a call involving Ricardo, who was experiencing a mental-health crisis.

24.     Upon arrival to Ricardo's home, Defendant ARNOLD, with no plan and without waiting for backup, alone approached Ricardo's home.

25.     Reacting to Defendant ARNOLD's presence, Ricardo went from the basement of his home where he had been doing his laundry, to his bedroom upstairs, and retrieved a knife that he had kept for self-defense.

26.     Ricardo then exited his home, at which time he was immediately shot by Defendant ARNOLD two times.

5

27.     Even after Ricardo had already been shot twice and had been neutralized, Defendant ARNOLD fired his gun into Ricardo two more times.

28.     Ricardo, who was known, or should have been known, to all Defendants to be suffering from schizophrenia and bipolar disorder, was having a mental health crisis and never directly threatened Defendant ARNOLD.

29.     Prior to Ricardo being shot as he ran from his front porch, Defendant ARNOLD failed to use a taser, or any form of less-lethal force, such as a bean-bag gun.

30.     Defendant ARNOLD killed Ricardo.

31.     Defendants CITY and BERKIHISER, as ARNOLD's employer and supervisor, respectively, prior to and at the time of this incident, had implicitly or explicitly permitted the use of lethal force when non-lethal force would have been reasonable.

### Defendants' Reckless Indifference to Ricardo's Prior History of Mental Health Problems

32.     Prior to and at the time of this incident, Defendant COUNTY and Defendant CITY had been in direct contact with Ricardo's family to coordinate a response to the family's request for help during Ricardo's multiple past mental health crises.

33.     Defendant COUNTY and Defendant CITY had multiple interactions with Ricardo and his family before September 13, 2020 and had become familiar with his psychiatric disability.

34.     Ricardo's family, on at least five other occasions since 2019, including one just few weeks earlier, on or about August 20, 2020, had contacted both Defendants COUNTY and CITY seeking assistance to manage Ricardo's schizophrenic episodes.

35.     Ricardo's known psychiatric disability is a disability protected under the Americans with Disabilities Act, which entitled him to reasonable accommodations.

6

36.     Despite Ricardo's well-recorded history of mental health issues, neither Defendant COUNTY nor CITY placed a hazard alert on the family's home for future service calls.

37.     On the date of the incident, as demonstrated in the 911 tape, one of Ricardo's sisters contacted Defendant COUNTY seeking assistance for her brother, who was experiencing a mental health breakdown.

38.     At the time of the call, Ricardo's sister informed the dispatcher that her brother had mental issues, including schizophrenia and bipolar disorder.

39.     Ricardo's sister specifically informed the dispatcher that there were no weapons, drinking, or drug use involved.

40.     Ricardo's sister informed the dispatcher that they simply needed help "with you bringing [Ricardo] to the hospital."

41.     While Defendant ARNOLD was en route to Ricardo's home, dispatch provided information to ARNOLD that Ricardo suffered from a mental-health illness and was experiencing a mental-health crisis.

42.     Defendant ARNOLD disregarded police guidelines by not waiting for backup and by approaching the home on his own.

43.     Defendant ARNOLD observed Ricardo's mother standing in the front doorway and Defendant ARNOLD yelled "Where did he go?".

44.     In response, Ricardo, who had come from his basement where he had been doing his laundry, and who had gone upstairs to his room to retrieve a knife that he kept for self-defense, came to the door and began running down the front steps of his family's house in the officer's direction. Ricardo then began moving down the sidewalk, as if trying to get past the officer.

7

45.     Defendant ARNOLD did not have a de-escalation option planned and failed to utilize de-escalation tactics of any kind.

**Defendants' Conduct is Part of LPD's Widespread
Policy and Practice of Using Excessive Force**

46.     Upon information and belief, Defendant ARNOLD was not equipped with, or unreasonably failed to use, non-lethal weapons, such as a Taser ERD, which are designed to stun or incapacitate a person from a distance.

47.     ARNOLD chose to use lethal force.

48.     Upon information and belief, Defendant ARNOLD had been a member of the Lancaster Police force for two and a half years.

49.     No tasers were fired, and no less-lethal means of neutralization were employed by ARNOLD.

50.     Prior to and during the period in which Ricardo was wrongfully shot, Defendant CITY operated a dysfunctional disciplinary system for Lancaster Police officers accused of serious misconduct. Defendant CITY almost never imposes significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. The Lancaster Police disciplinary apparatus includes no mechanism for identifying police officers who are repeatedly accused of engaging in misconduct.

51.     Defendant CITY and the Lancaster Police Department also routinely fail to conduct independent investigations of incidents involving officers who use excessive force or violate other constitutional rights. All investigations are conducted inhouse or by the local District Attorney, who has direct ties to the police offers accused of police misconduct.

8

52.     As a result of these policies and practices of the Defendant CITY, members of the Lancaster Police Department are emboldened to act with impunity to violate the constitutional and civil rights of citizens. This includes Defendants in this case.

53.     Defendant CITY has deficient policies and practices regarding officer supervision and training, including a failure to invest in the resources, staffing, and planning required to train a department of approximately 147 sworn members and 46 civilian employees, which leaves officers unprepared to police effectively and lawfully the approximately 55,000 residents the Lancaster Police Department serves.

54.     Officer errors and misconceptions that result from lack of training are not corrected in the field, because the Lancaster Police Department has neither structured supervision in a way that will adequately support officers, nor invested in programs and systems that will detect when officers are in need of help or exhibiting behavior that must be corrected. Officers' ability to stay safe, protect public safety, and police within constitutional standards suffers as a result.

55.     An article published by LPN Online in 2015 analyzing excessive-force lawsuits in Lancaster, Pennsylvania found that officers had engaged in numerous constitutional violations against the public.

56.     In one instance, officers were accused of tackling, punching, and kicking an individual by the name of Joshua Karoly, and subsequently denying him medical attention.

57.     Another lawsuit alleged that an officer grabbed Ramona Silva, "pushed her against the vehicle and violently pulled her arms behind her," injuring her shoulder.

58.     Other lawsuits alleged violations of use-of-force policy.

59.     Then-Mayor Rick Gray admitted to widespread failures and practices of the police department and was quoted as saying "But I'm in no way trying to minimize [the allegations in the lawsuits]" and "[s]ome of these claims are legitimate."

60.     Since 2015, there have been additional lawsuits brought because of constitutional violations committed by members of the Lancaster Police Department.

61.     Defendants have paid millions of dollars to settle excessive-force lawsuits.

62.     Defendants CITY and COUNTY's leadership, despite being on notice of a clear pattern regarding the policies and practices, lack of support, lack of training, and lack of structured supervision, have not made the necessary reforms to correct these deficiencies. Community and officer safety suffer as a result.

**Defendants' Reckless Indifference to Ricardo's Medical Needs After He Was Shot**

63.     After Defendant ARNOLD shot Ricardo, other police officers arrived at the scene.

64.     Upon information and belief, the UKNOWN POLICE OFFICERS had no special medical training and yet intervened to prevent Ricardo from getting emergency medical attention by cancelling the ambulance that had previously been dispatched to the scene.

65.     Video provided by neighbors shows the neighbors begging the police officers at the scene to immediately call an ambulance and asking why no medical professionals had been called to assist and to try to preserve Ricardo's life.

66.     The Lancaster Coroner pronounced Ricardo's time of death as 1835 hours.

67.     Between 1600 hours, when Defendant ARNOLD shot Ricardo, and 1820 hours, the Defendants failed to provide emergency medical services in attempt to preserve Ricardo's life.

## DAMAGES

68.     Plaintiffs were physically, mentally, emotionally and financially injured and damaged as a proximate result of Ricardo's wrongful death, including, but not limited to, the loss of Ricardo's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses, pursuant to 42 Pa.C.S.A § 8301.

69.     Plaintiffs are entitled to recover wrongful death damages pursuant to 42 Pa.C.S.A. § 8301 and Pa. R. Civ. P. 2202.

70.     Pursuant to 42 Pa.C.S.A. § 8302, Plaintiffs are further entitled to recover for damages incurred by Ricardo before he died as the result of being assaulted and battered by the use of excessive force, for damages for Ricardo's loss life and loss of enjoyment of life in violation of the Fourth Amendment to the U.S. Constitution causing Ricardo's death by excessive force, and for any penalties or punitive damages to which Ricardo would have been entitled to recover, had he lived. Plaintiffs are further entitled to recover for Ricardo's own pain and suffering and emotional distress preceding his death, which was a direct consequence of Defendants' § 1983 violations.

71.     The conduct of Defendants was malicious, wanton, and oppressive. Plaintiffs are therefore entitled to an award of punitive damages against said Defendants.

72.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of Decedent, under the law. Plaintiffs are therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 U.S. Code § 1983.

**COUNT I**
42 U.S.C. § 1983
**Excessive Use of Deadly Force**
(Against Defendant ARNOLD)

73.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

74.     At all times relevant herein, Defendant ARNOLD had a duty not to violate the rights of Ricardo under the U.S. Constitution Fourth Amendment.

75.     Decedent Ricardo had a clearly established constitutional right under the U.S. Constitution to be free from excessive and deadly force.

76.     In this case, the use of deadly force was unreasonable and excessive.

77.     Defendant ARNOLD acted under color of law and deprived Plaintiff of certain constitutionally protected rights, including, but not limited to:

    a)  The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution; and

    b)  The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendments to the U.S. Constitution.

78.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the U.S. Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**COUNT II**
42 U.S.C. § 1983
*Monell* Municipal Liability – Policy and Practice
(Against Defendant City of Lancaster)

79.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

80.     As described in detail above, the City of Lancaster is liable for the violation of Ricardo's constitutional rights because Ricardo's injuries were caused by the policies, practices,

and customs of the City of Lancaster, as well as by the actions of policy-making officials for the City of Lancaster.

81.    Defendant CITY promulgated and maintained unconstitutional policies, ordinances, or regulations that allowed its police officers to use their service guns in violation of the rights of members of the community.

82.     Defendant CITY was deliberately indifferent to the widespread misconduct of Lancaster Police Officers in the application of unnecessary, excessive, and deadly use of force.

83.    As a direct result of those policies, ordinances, regulations, and/or indifference, Ricardo was unjustifiably shot and killed by Defendant ARNOLD on September 13, 2020.

84.    Plaintiffs suffered emotional distress as a result of said policies, ordinances, or regulations.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## COUNT III
42 U.S.C. § 1983
*Monell* Municipal Liability – Policy and Practice
(Against Defendant Lancaster County)

85.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

86.    Defendant COUNTY operates the dispatch and 911 call center that received a call for help dealing with Ricardo's mental health crisis on September 13, 2020.

87.    The Lancaster County Commissioners are the final policymakers for Defendant COUNTY.

88.    The Lancaster County Commissioners have final policymaking authority over various Lancaster County services, including, but not limited to, the Lancaster County Intervention Team and the Lancaster County-Wide Communications.

13

89.     Lancaster County has a Board consisting of three County Commissioners. The Lancaster County Commissioners have legislative powers and "serve as the managers and administrators of county government, name citizens to boards, commissions and authorities, and award contracts."

90.     Lancaster County-Wide Communications (hereinafter "LCWC") is a result of a proposal made to the Lancaster County Commissioners by the Lancaster Law Enforcement Officers Association in the early part of 1966.

91.     LCWC is the sole Public Safety Answering and Dispatch Point for all emergency services, public safety agencies, and related support agencies within Lancaster County, including LPD.

92.     LCWC contends that its mission is to "provide timely, convenient access to public safety agencies for those in need."

93.     LCWC contends that its vision is to "process all requests for service in an expeditious, courteous, and professional manner to reduce loss of life and property".

94.     Despite mental health calls being a common national issue that results in unnecessary deaths (a nationwide survey of 2,406 senior law enforcement officials found a 63.03% increase on calls for service involving individuals with mental illness), the LCWC fails to provide adequate training for mental health crises or a way to classify mental health calls.

95.     On the date of Ricardo's wrongful shooting, Defendant COUNTY failed to dispatch a crisis intervention team to adequately deal with the call they received.

96.     On the date of Ricardo's wrongful shooting, Defendant COUNTY failed to give the police officers adequate information to deal with Ricardo's mental health crisis.

97.     Defendant COUNTY is liable for the violation of Ricardo's constitutional rights because Ricardo's injuries were caused by the policies, practices, and customs of Defendant COUNTY, as well as by the actions of policy-making officials for Defendant COUNTY.

98.     Defendant COUNTY acted under color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to, the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution.

99.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**COUNT IV**
42 U.S.C. § 1983
Unreasonable Denial of Medical Care – *Monell* Liability
(Against all Defendants)

100.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

101.    In the manner described above, Defendants had notice of Ricardo's serious medical needs, and yet they failed to provide him with necessary medical attention. They further intervened in or prevented the provision of medical care by others, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

102.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and/or reckless indifference to Ricardo's constitutional rights.

103.    As a result of Defendants' misconduct, Ricardo experienced pain, suffering, emotional distress, physical injury, and death.

104.   The misconduct described in this Count was undertaken pursuant to the policies and practices of the Defendants CITY and COUNTY in the manner more fully described above.

### COUNT V
Negligent Hiring, Training, Supervision, And Monitoring
(Against Defendants City of Lancaster, County of Lancaster, and Police Chief Berkihiser)

105.   Plaintiff incorporates each paragraph of this complaint as if fully restated here.

106.   Upon information and belief, high ranking CITY officials, including Mayor Danene Sorace and Police Chief BERKIHISER, knew and/or reasonably should have known that their police officers, including Defendant ARNOLD and the other unknown responding police officers, were either untrained or improperly trained, and that Defendant CITY maintained deficient customs in the use of force in the following areas:

   a.   Situations where reasonably available less-lethal weapons are required to be used against subjects who do not pose an imminent threat of serious injury or harm, even if one less-lethal weapon has been used unsuccessfully, and where the initial unsuccessful use of a less-lethal weapon is not a basis to legally justify the use of lethal force when the subject does not, and continues to not, present an imminent threat of serious injury or harm;

   b.   Situations where reasonable opportunities for de-escalation of potentially threatening subjects exist, and must be employed to defuse a potential threat in place of lethal force, including, but not limited to: (i) the reasonable re-deployment and/or re-location of police officers; (ii) the reasonable use of effective communication that is not confrontational, escalating, or demanding; and (iii) the reasonable creation of time and distance to help de-escalate, to allow the use of

16

effective communication, and to allow the continuing opportunity to use less-lethal weapons; and

c.  Situations where the failure of a subject, particularly one who is known or appears to be suffering from a mental impairment, to comply with orders while not presenting an imminent threat of serious injury or harm, does not justify the use of lethal force.

107.  Defendant COUNTY knew, or reasonably should have known, that its employees were either untrained or improperly trained, and that Defendant COUNTY maintained deficient customs in handling calls seeking assistance for mentally disturbed individuals.

108.  These policies, practices, and training failures were a violation of Ricardo's rights as a mentally disturbed person and a substantial factor culminating in his shooting death on September 13, 2020.

109.  Despite having notice regarding these failures, Defendants CITY, BERKIHISER, COUNTY, and other supervisors condoned, encouraged, and/or tacitly authorized the continuing pattern and practice of misconduct.

110.  The aforementioned acts and/or omissions and/or deliberate indifference by the Defendants resulted in the deprivation of Ricardo's constitutional rights under the Fourth and/or Fourteenth Amendments to the U.S. Constitution.

111.  These breaches were the proximate causes of Ricardo's death and consequent damages.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## COUNT VI
### Pennsylvania Law - Battery
(Against Defendant ARNOLD)

112.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

113.    In the manner described above, Defendant ARNOLD, acting under color of law within the scope of his employment, engaged in offensive physical contact made without the consent of Ricardo when Defendant ARNOLD shot him four times.

114.    These actions were undertaken intentionally, willfully and wantonly, or recklessly.

115.    The misconduct described in this Count was objectively unreasonable and was undertaken with intentional disregard of Ricardo's rights.

116.    As a result of the Defendant ARNOLD's misconduct described in this Count, Ricardo suffered great mental anguish, physical and emotional pain and suffering, and death.

## COUNT VII
### Pennsylvania Law – Wrongful Death
(Against Defendant CITY, ARNOLD, BERKIHISER, UNKNOWN POLICE OFFICERS)

117.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

118.    As a proximate result of Defendants' conduct, Ricardo suffered severe physical injury, severe emotional and mental distress, and death.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## COUNT VIII
### Civil Rights Violations Under 42 Pa.C.S.A. § 8309
(Against All Defendants)

119.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

120.    The conduct of Defendants, acting in the course and scope of their employment for Defendant CITY, through the use of wrongful and excessive force, violated 42 Pa.C.S.A. § 8309 in that they interfered with Ricardo's exercise and enjoyment of his civil rights.

121.     As a direct and proximate result of Defendants' violation of 42 Pa.C.S.A. § 8309, Ricardo suffered violation of his constitutional and statutory rights, and suffered damages as set forth herein.

122.     Since this conduct occurred in the course and scope of their employment, Defendant CITY is therefore liable to Plaintiffs pursuant to *respondeat superior*.

WHEREFORE, Plaintiff prays for relief, as hereinafter set forth.

## COUNT IX
Violation of the Americans with Disabilities Act
(Against Defendant CITY)

123.     Police officers are required to comply with the Americans with Disabilities Act and provide reasonable accommodation to people with disabilities, including in the course of making an arrest or detention, even against an armed subject, barring some emergency reason that would make compliance impractical.

124.     In this situation, the police response was set up specifically to respond to Ricardo's psychiatric disability, to get him treatment for it, and to help him, not to kill him.

125.     The officers involved in this incident failed to reasonably accommodate Ricardo's known psychiatric disability, they used lethal force against him unreasonably, and they were negligent in their tactical response to Ricardo.

126.     Defendants were on clear notice of Ricardo's mental disability, both by information provided by the family on the 911-call and by prior incidents with the Lancaster Police Department.

127.     Instead of providing reasonable accommodations required under the ADA, such as de-escalation, Defendant ARDNOLD approached the house in a threatening manner, thereby escalating the situation.

19

128.    All training in de-escalation tactics against a person suffering from a disability like schizoaffective disorder dictates that such escalation tactics are counter-productive and should be expected to escalate the situation, and potentially cause the person with the mental disability to misperceive the situation as a threat and cause the person to run or even potentially attack officers.

129.    Defendant ARNOLD violated 42 U.S. Code § 12132, commonly known as the American with Disabilities Act, in failing to provide reasonable accommodations for Ricardo's known disability when it was reasonable to provide such accommodations, no exigency existed to preclude the provision of such accommodations, and such accommodations would have resulted in either no force or much less significant than lethal force being used against Ricardo.

130.    The shooting of Ricardo was the proximate result of Defendant CITY's failure to reasonably train police officers in the proper and reasonable use of force and to provide reasonable accommodations under the Americans with Disabilities Act for Qualified Individuals when making arrests, responding to a request for involuntary examination and treatment under Pennsylvania's Mental Health Procedures Act § 302, and/or using force.

131.    These substantial failures reflect Defendant CITY's policies implicitly ratifying and/or authorizing the use of excessive force by its police officers and the failure to reasonably train police officers employed by Defendant CITY in compliance with the ADA in making arrests, detentions, or complying with the Mental Health Procedures Act § 302.

132.    Defendant CITY is liable under 42 U.S. Code § 12132 for its employees' violations of the Americans with Disabilities Act.

133.    The aforementioned conduct of Defendant ARDNOLD excluded Ricardo from participation in, and denied Ricardo the benefits of, Defendant CITY's programs and activities, and/or otherwise discriminated against Ricardo.

134.    The exclusion, denial of benefits, and/or discrimination against Ricardo was by reason of Ricardo's recognized disability.

### CLAIMS FOR INJURIES SUFFERED BY MIGUELINA PENA

### COUNT X
Pennsylvania Law – Intentional Infliction of Emotional Distress
(Against Defendants CITY and ARNOLD)

135.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

136.    Defendants' conduct in using excessive and unjustified force against Ricardo was outrageous, causing his mother, who personally witnessed the killing of her son, to suffer severe emotional distress, pain, suffering, and anxiety.

137.    The actions, omissions, and conduct of the Defendants, as set forth above, were extreme and outrageous. These actions were rooted in an abuse of power and authority, and were undertaken with the intent to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### COUNT XI
42 U.S.C. § 1983
Unlawful Detention
(Against Defendant CITY and UNKNOWN POLICE OFFICERS)

138.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

139.    Following the shooting of Ricardo, various police officers tackled Plaintiff, Miguelina Peña, against a police vehicle.

140.    The Defendants subsequently put Miguelina Peña in a marked police vehicle and transported her to the police station and was not allowed to leave. An attorney affiliated with the American Civil Liberties Union ("ACLU") was called to assist Miguelina Peña and it was only at that point that Defendants allowed Plaintiff, Miguelina Peña, to leave the police station.

21

141.    The Defendants, while acting individually, jointly, as well under color of law and within the scope of their employment, deprived Plaintiff, Miguelina Pena, of her constitutional right not to be wrongfully detained.

142.    Defendants' conduct denied Plaintiff, Miguelina Pena, her constitutional rights under the Fourth and Fourteen Amendment.

143.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard for her constitutional rights.

144.    As a result of Defendants' misconduct, Plaintiff, Miguelina Pena, suffered physical injuries, including excessive bruising, great mental anguish, humiliation, physical and emotional pain, and loss of liberty.

145.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Defendant CITY and the Lancaster Police Department.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## COUNT XII
### Pennsylvania Law - Battery
### (Against Defendants CITY and UNKNOWN POLICE OFFICERS)

146.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

147.    In the manner described above, Defendants UNKNOWN POLICE OFFICERS, acting under color of law within the scope of their employment with Defendant CITY, engaged in offensive physical contact made without the consent of Miguelina.

148.    Following the shooting of Ricardo, various police officers tackled Plaintiff, Miguelina Peña, against a police vehicle, which resulted in serious bruising on her leg.

149.    These actions were undertaken intentionally, willfully and wantonly, or recklessly.

150.    The misconduct described in this Count was objectively unreasonable and was

undertaken with intentional disregard of Plaintiff's rights.

151.    As a result of the Defendants' misconduct described in this Count, Plaintiff suffered great mental anguish, physical and emotional pain and suffering, and bruising on her leg.

### JURY DEMAND

Plaintiff hereby demands a jury trial in this action.

### PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1.    For general damages in a sum according to proof;

2.    For special damages in a sum according to proof;

3.    Statutory damages, punitive damages, and reasonable attorney's fees under 42 Pa.C.S.A.§ 8309;

4.    Compensatory damages, punitive damages, attorney's fees, and costs incurred in relation to Ricardo and Miguelina's Civil Rights Actions pursuant to 42 U.S.C. § 1988;

5.    Injunctive relief and attorneys' fees incurred in relation to Ricardo's ADA action pursuant 42 U.S. Code § 12205; and

6.    For such other and further relief as the Court deems just and proper.

Dated:

PERNA & ABRACHT, LLC

Michael R. Perna
mperna@pa4law.com
Ryan Borchik
rborchik@pa4law.com
610 Millers Hill

23

PO Box 96
Kennett Square, PA 19348
610-444-0933
F: 610-444-5695
Attorney for Plaintiffs


**LEVIN & PERCONTI**

Steven M. Levin *(pro hac vice, pending admission)*
sml@levinpercoti.com
Daisy Ayllon *(pro hac vice, pending admission)*
day@levinperconti.com
Julie A. Murphy *(pro hac vice, pending admission)*
jam@levinperconti.com
Attorney for Plaintiffs

## ATTORNEY'S VERIFICATION

I hereby certify that I am an attorney with Perna & Abracht, LLC and counsel for

Plaintiffs, MIGUELINA PEÑA, Individually and as Independent Administrator of the Estate of

RICARDO MUÑOZ, Deceased, who is not presently available to make this Verification.   Under

the provisions of PA.R.C.P. 1024(c), I hereby verify that facts stated in the attached Complaint

are true and correct to the best of my knowledge, information and belief.   I understand that false

statements therein are made subject to the penalties of 18 Pa.C.S. Section 4904 relative to

unsworn falsifications to authorities.

2-4-21
_____
Date

_____
Michael R. Perna, Esquire
Attorney for Plaintiff