## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUELINA PENA, Individually and as Independent Administrator of the Estate of RICARDO MUNOZ, deceased | : : : : | NO. 5:21-CV-00590 |
| vs. | : : | |
| CITY OF LANCASTER, a municipal Corporation, JARRAD BERKIHISER, in his individual and official capacity as Chief of Police for the CITY OF LANCASTER, KARSON ARNOLD, in his individual and official capacity as a police officer for the CITY OF LANCASTER, COUNTY OF LANCASTER, PENNSYLVANIA, UNKNOWN POLICE OFFICERS | : : : : : : : : : : : | JURY TRIAL DEMANDED |

### ORDER

AND NOW, this _____ day of _____, 2021, upon consideration of Defendant Lancaster County's Motion to Dismiss Plaintiff's Complaint, and any response thereto, it is hereby **ORDERED** and **DECREED** that Defendant's Motion to Dismiss is **GRANTED**. It is **ORDERED** and **DECREED** that Plaintiffs' Complaint against Defendant Lancaster County is hereby **DISMISSED WITH PREJUDICE** and Defendant Lancaster County is **DISMISSED** from the matter.

BY THE COURT:

_____ J.

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUELINA PENA, Individually and as Independent Administrator of the Estate of RICARDO MUNOZ, deceased : : : : vs. : : : CITY OF LANCASTER, a municipal Corporation, JARRAD BERKIHISER, in his individual and official capacity as Chief of Police for the CITY OF LANCASTER, KARSON ARNOLD, in his individual and official capacity as a police officer for the CITY OF LANCASTER, COUNTY OF LANCASTER: PENNSYLVANIA, UNKNOWN POLICE OFFICERS : : : : : : : : | NO. 5:21-CV-00590  JURY TRIAL DEMANDED |

**DEFENDANT LANCASTER COUNTY'S MOTION TO DISMISS**

Defendant Lancaster County, by and through its counsel, Marshall Dennehey Warner Coleman and Goggin, respectfully moves to dismiss Plaintiffs' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). In support thereof, Defendant submits the attached Memorandum of Law.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

Dated: April 9, 2021         By: _____
JOHN P. GONZALES, ESQUIRE
*Attorney for Defendant,*
County of Lancaster

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUELINA PENA, Individually and as Independent Administrator of the Estate of RICARDO MUNOZ, deceased | : <br> : <br> :   NO. 5:21-CV-00590 <br> : |
| vs. | : <br> : |
| CITY OF LANCASTER, a municipal Corporation, JARRAD BERKIHISER, in his individual and official capacity as Chief of Police for the CITY OF LANCASTER, KARSON ARNOLD, in his individual and official capacity as a police officer for the CITY OF LANCASTER, COUNTY OF LANCASTER, PENNSYLVANIA, UNKNOWN POLICE OFFICERS | :   JURY TRIAL DEMANDED <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**DEFENDANT, LANCASTER COUNTY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

I. **INTRODUCTION**

Plaintiff Miguelina Pena, individually and as independent administrator of the Estate of Richardo Munoz filed a complaint against the Defendants City of Lancaster, Lancaster County, and various individual defendants for alleged civil rights violations in the aftermath of a police shooting in which Ricardo Munoz died. With respect to Moving Defendant Lancaster County, Plaintiffs allege that the County's 911 dispatchers were ill equipped to handle Munoz's mental health episodes and allege civil rights violations pursuant to 42 U.S.C. § 1983 as well as state law claims. However, Plaintiff's complaint fails to state a cause of action upon which relief can be granted as to Moving Defendant Lancaster County, and any and all claims against Lancaster County should be dismissed with prejudice.

## II.  FACTUAL ALLEGATIONS

On September 13, 2020, at approximately 4:00 p.m. Defendant Karson Arnold, a police officer employed by co-Defendant City of Lancaster, responded to an emergency call involving Munoz, who was allegedly in the midst of a mental health crisis. *See* Pl. Compl. ¶ 23. Lancaster County 911 dispatchers provided information to police that Munoz was suffering a mental health episode. *Id*. at ¶ 41. Upon seeing the police, Munoz ran to his bedroom upstairs and grabbed a knife. *Id*. at ¶ 25. Munoz then exited his home with the knife, where police ultimately shot and killed Munoz. *Id*. at ¶ 25. Allegedly, Munoz's family called police five different times since 2019 regarding Munoz's mental health episodes. *Id*. at ¶ 34.

Now, Plaintiff brings forth this claim alleging *Monell* liability against Lancaster County regarding mental health crisis training and unreasonable denial of medical care. *See* Pl. Compl. Plaintiff also brings a claim of negligent hiring and an alleged civil rights violation pursuant to 41 Pa. C.S. § 8309. *Id*.

## III.  LEGAL STANDARD

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level' " has the plaintiff stated a plausible claim. *Id*. at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Id*. (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

IV. **ARGUMENT**

    A. **Count III Must Be Dismissed With Prejudice**

In Count III, Plaintiffs allege Lancaster County failed to property train their 911 dispatchers and had a policy, practice, or custom which violated Munoz's constitutional rights. But, Plaintiffs, however, failed to sufficiently allege a violation by any County employee, or assert a *Monell* claim against the County.

        1. **Plaintiff Failed To Plead An Underlying Constitutional Violation**

Here, Plaintiff brings a claim pursuant to the Fourth and Fourteenth Amendments. To state a Section 1983 claim for excessive force in violation of the Fourth Amendment, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003). Most importantly, it is axiomatic that a plaintiff in a Section 1983 action "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). Plaintiff failed to tie a County employee to this alleged constitutional harm. As such, Count III must be dismissed with prejudice. *See Morency v. City of Allentown*, No. 5:19-cv-5304, 2020 WL 5868407, at *14 (E.D. Pa. Oct. 2, 2020) (holding if there is no underlying constitutional violation there is no *Monell* claim).

        2. **Plaintiff Failed To Plead A Proper, Policy, Custom, or Training Deficiency on His Monell Claim**

To support a *Monell* claim, a plaintiff must establish that an unconstitutional custom, practice or policy is responsible for his alleged damages. A municipality can be held liable under

Section 1983 only if a plaintiff shows that the actions that were violative of his civil rights, implemented a policy, ordinance or custom of the local government or were committed by an official high enough in government so that the actions can fairly be said to represent a government decision. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). Plaintiff must provide evidence that the government unit itself supported a violation of plaintiff's constitutional rights. *Bielevich v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *Monell*, 436 U.S. at 695. Plaintiff must also show a causal link between the alleged custom or policy and the alleged Section 1983 violation and concomitant harm. In short, "a municipality can be liable under §1983 only where its policies are the 'moving force behind the violation.'" *City of Canton v. Harris*, 489 U.S. 379, 386 (1989) (quoting *Monell*, 436 U.S. at 694).

"Establishing municipal liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). "Generally, deficient training can only amount to the requisite deliberate indifference 'where the failure to train has caused a pattern of violations.'" *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). The Court of Appeals for the Third Circuit has long held that "a failure to train, discipline or control can only form the basis for § 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident, or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 1998); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997); *Freedman v. City of Allentown*, 853 F.2d 1111, 1117 (3d Cir. 1988). More specifically, a plaintiff "must show that a 'reasonable municipal policy maker had knowledge of a pattern of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the

particular right in question.'" *Cacciatore v. City of Philadelphia*, 2005 U.S. Dist. Lexis 19064, *1, *6 (E.D. Pa. Sept. 1, 2005) (quoting *Garcia v. Cnty. of Bucks*, 155 F. Supp. 259, 268 (E.D. Pa. 2001)); *Strauss v. Walsh*, 2002 U.S. Dist. Lexis 24717, *1, *10 (E.D. Pa. Dec. 18, 2002); *Altieri v. Pennsylvania State Police*, 2000 U.S. Dist. Lexis 5041, *1, *39-40 (E.D. Pa., April 20, 2000).

Here, Plaintiffs failed to plead the requisite factual detail to establish a *Monell* claim. Plaintiffs failed to connect a policy or custom which led to the constitutional deprivation. Plaintiffs' complaint admits the dispatchers warned police that Munoz was suffering a mental health episode. *See* Pl. Compl. ¶ 41. The constitutional harm is the death of Munoz; however, there is no custom or policy linking the County to his death. Moreover, Plaintiffs fail to establish a *Monell* failure to train claim as well. Plaintiff fails to plead a prior pattern of similar incidents and circumstances establishing that County 911 dispatchers were ill equipped to handle mental health episodes. Plaintiffs' complaint acknowledged the dispatchers alerted police to Munoz's mental health episode. *See* Pl. Compl. ¶ 41. Without more, the failure to train claim fails. Finally, Plaintiffs failed to cite to prior instances of a failure to train on the part of the dispatchers. The prior instances Plaintiffs do not provide any details about how the dispatchers actions amounted to a failure to train so obvious it amounts to deliberate indifference to a known failure to train. Accordingly, Plaintiffs' Count III *Monell* claim must be dismissed.

### B. Count IV Must Be Dismissed With Prejudice

In Count IV, Plaintiffs bring a *Monell* claim for unreasonable denial of medical care. But, again, Plaintiffs failed to tie an underlying constitutional violation as any County employee. Thus, Count IV must be dismissed.

#### 1. Plaintiff Failed To Plead An Underlying Constitutional Violation

Here, Plaintiffs' Count II purports to assert another violation pursuant to the Fourth and Fourteenth Amendments. However, as discussed in Section IV(A)(1), *supra*, Plaintiffs failed to tie an individual County employee to the alleged harm and, as such, there is no underlying constitutional violation. If there is no underlying constitutional violation, there cannot be a *Monell* claim.

Typically, unreasonable denial of medical care claims apply to direct care-givers such as for first responders, not 911 dispatchers. *See Washington v. City of Philadelphia*, No. 17-cv-04706, 2021 WL 949461, at 3 (E.D. Pa. Mar. 12, 2021) ("To establish a claim for denial of medical treatment under the Fourteenth Amendment, a plaintiff must show: (1) a serious medical need; and (2) behavior on the part of the *police officers* that constitutes deliberate indifference to that need.") (emphasis added) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

911 dispatchers are not police officers, or first responders. No County 911 dispatcher was at the scene. To the contrary, Plaintiff's Complaint alleges Count 911 dispatchers did receive calls for Plaintiff's behavior and dispatched first responders to the scene. These are no cases in the Third Circuit that impose liability on 911 dispatchers under these circumstances. No dispatchers were present at the scene to determine a serious medical need, much less ignoring a serious medical need. Accordingly, Count IV must be dismissed with prejudice.

2. **Plaintiffs Failed To Plead A Policy or Custom Which Connects To Munoz's Alleged Unreasonable Denial of Care**

Under *Monell*, a municipality cannot be held liable on a theory of respondeat superior. *Monell*, 436 U.S. at 691. Rather, a municipal entity is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights. *Id*. at 694, 98 S.Ct. 2018. An "official policy" is created, not only by formal rules, but also

when the "government's authorized decisionmakers" make the "decision to adopt [a] particular course of action." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). A "custom" exists when a "widespread practice" is "so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (internal citations omitted).

Here, Plaintiffs fail to identify a policy that caused the alleged constitutional harm Indeed, it would be impossible to do so given that 911 dispatchers do not arrive at the scene; rather, they take information from first responders who actually respond to the scene. Moreover, Plaintiffs cannot use this single incident to establish their claim. *See Tuttle*, 471 U.S. at 823–24. The complaint fails to establish in any way how the 911 dispatchers unreasonably denied Munoz care. 911 dispatchers did not arrive to the scene and witness the injuries. The 911 dispatchers relayed information from first responders to relevant parties. The 911 dispatchers are simply an intermediary for information. Plaintiffs' complaint does not allege they possessed the personal knowledge necessary regarding medical care as were not personally at the the scene. Thus, Plaintiffs cannot connect a policy to this alleged constitutional harm and Plaintiffs' *Monell* unreasonable denial of medical care claim, Count IV, must be dismissed.

### C. Count V Must Be Dismissed With Prejudice

In Count V, Plaintiffs bring a negligent hiring, training, and supervision claim. Plaintiffs failed to distinguish whether this claim falls under federal or state law. As such, Moving Defendant will address both. Nonetheless, for either reason, this claim must be dismissed with prejudice.

#### 1. Plaintiffs' Negligent Hiring *Monell* Based Claim Fails

"Under limited circumstances, courts have recognized claims for *Monell* liability based on a municipality's hiring decisions—in particular 'where adequate scrutiny of an applicant's

background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[s].'" *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1997)). A plaintiff must allege a particular employee's "background was so obviously inadequate as to put [the employer] on notice of the likelihood that [a violation or] injury would result." *Id*.

Here, Plaintiffs fail to allege that the County hiring decisions of unknown 911 dispatchers would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a constitutional right. Plaintiffs fail to allege which specific hiring of a 911 dispatcher would lead a constitutional deprivation. Plaintiffs further fail to identify the inadequate scrutiny taken by the County in hiring these unnamed 911 dispatchers. The complaint is utterly devoid in establishing any sort of *Monell* liability based upon hiring decisions. As such, to the extent that Count V is based upon *Monell* liability, it must be dismissed.

## 2. Plaintiffs' Negligent Hiring Claim Is Precluded By The PSTCA

The Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person" – unless the conduct of the municipality or its employee fits into one of a few narrow categories enumerated in the PSTCA. 42 Pa. C.S. §§ 8541-42.

Under § 8541, a local agency, such as Lancaster County, enjoys absolute immunity from tort liability unless the plaintiff satisfies three statutory requirements. *Mascaro v. Youth Study Center*, 523 A.2d 1118, 1121 (Pa. 1987). First, he must "demonstrate that at common law or by

statute one not having an immunity defense available could be held liable for the same harm alleged against the agency." *Id*. Second, he must demonstrate that his injury "was caused by the negligent acts of the agency or an employee acting within the scope of his office or duties, excluding acts of crimes, fraud, malice or willful misconduct." *Id*. at 1123. Third, he must show that the municipality's actions fall into one of the nine exceptions listed in § 8542(b): (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse. 42 Pa. C.S. § 8542(b).

Moving Defendant, Lancaster County, is a local agency under the Tort Claims Act. *See* 42 Pa. C. S. § 8501; *Simko v. County of Allegheny*, 869 A.2d 571, 573 (Pa. Cmmw. Ct. 2005).

Numerous cases have found that negligent hiring, supervision, or retention claims are barred by, and do not fall within any of the enumerated exceptions to, governmental immunity in the Tort Claims Act. *See Gjeka v. Delaware Cnty. Cmty. Coll.*, No. Civ.A. 12–4548, 2013 WL 2257727, at *12 (E.D. Pa. May 23, 2013) (finding that the plaintiff's claim for "negligent and careless hiring, retention, or lack of supervision" must be dismissed because it was barred by the Tort Claims Act); *Joyner v. Sch. Dist. of Phila.*, 313 F. Supp. 2d 495, 504 (E.D. Pa. 2004) (dismissing plaintiff's claim because "[n]egligent hiring, training and retention of an unfit supervisor is not one of the negligent acts for which immunity is waived" under the Tort Claims Act).

Accordingly, to the extent that Plaintiffs' negligent hiring claim is being asserted as state law in Count V, is precluded by immunity and must be dismissed with prejudice.

### D. **Plaintiffs 42 Pa.C.S.A. § 8309 Claim Must Be Dismissed**

In Count VIII, Plaintiffs bring a civil rights violation pursuant to 42 Pa.C.S.A. § 8309. That statute, states, in relevant part, as follows, "A person who incurs injury to his person or damage or loss to his property as a result of conduct described in 18 Pa .C.S. § 2710 (relating to ethnic intimidation) or 3307 (relating to institutional vandalism) . . . ." 42 Pa.C.S. § 8309.

The two relevant provisions in 42 Pa.C.S. § 8309 are ethnic intimidation and institutional vandalism. Ethnic intimidation is defined as follows:

> A person commits the offense of ethnic intimidation if, with malicious intention toward the race, color, religion or national origin of another individual or group of individuals, he commits an offense under any other provision of this article or under Chapter 33 (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) or under section 3503 (relating to criminal trespass) with respect to such individual or his or her property or with respect to one or more members of such group or to their property.

18 Pa.C.S. § 2710

Next, institutional vandalism is defined as follows:

> (a) Offenses defined.--A person commits the offense of institutional vandalism if he knowingly desecrates, as defined in section 5509 (relating to desecration or sale of venerated objects), vandalizes, defaces or otherwise damages:
>
> (1) any church, synagogue or other facility or place used for religious worship or other religious purposes;
>
> (2) any cemetery, mortuary or other facility used for the purpose of burial or memorializing the dead;
>
> (3) any school, educational facility, community center, municipal building, courthouse facility, State or local government building or vehicle or juvenile detention center;
>
> (4) the grounds adjacent to and owned or occupied by any facility set forth in paragraph (1), (2) or (3); or
>
> (5) any personal property located in any facility set forth in this subsection.

18 Pa.C.S. § 3307.

Here, there is nothing in the complaint to establish Lancaster County committed ethnic intimidation or institutional vandalism. Given the allegations in the complaint, it would be impossible to allege such behavior on the part of 911 dispatchers. 42 Pa.C.S.A. § 8309 does not apply to this case as a cause of action. Therefore, Count VIII must be dismissed with prejudice.

## V.  CONCLUSION

Therefore, Lancaster County's motion to dismiss must be granted and the County should be dismissed as a defendant.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

Dated: April 9, 2021    By: _____
JOHN P. GONZALES, ESQUIRE
*Attorney for Defendant,*
County of Lancaster

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUELINA PENA, Individually and as Independent Administrator of the Estate of RICARDO MUNOZ, deceased : : : : vs. : : CITY OF LANCASTER, a municipal : Corporation, JARRAD BERKIHISER, : in his individual and official capacity : as Chief of Police for the CITY OF : LANCASTER, KARSON ARNOLD, : in his individual and official capacity : as a police officer for the CITY OF : LANCASTER, COUNTY OF LANCASTER: PENNSYLVANIA, UNKNOWN : POLICE OFFICERS : | NO. 5:21-CV-00590<br><br>JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I, JOHN P. GONZALES, ESQUIRE, do hereby certify that a true and correct copy of Defendant's Motion to Dismiss and Memorandum of Law was electronically filed with the Court on the below date, and is available for viewing and downloading from the ECF System.

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

Dated: April 9, 2021    By: _____
JOHN P. GONZALES, ESQUIRE
*Attorney for Defendant,*
County of Lancaster