IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUELINA PEÑA, | : | |
| *Individually and as Independent Administrator* | : | |
| *of the Estate of Ricardo Muñoz, deceased* | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-CV-590-JLS |
| | : | |
| CITY OF LANCASTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**Schmehl, J.**  *s/*JLS                                                                                     **January 4, 2022**

      Plaintiff Miguelina Peña, administrator of the Estate of Ricardo Muñoz, brings this civil rights action after a City of Lancaster police officer shot and killed her son as he ran at the police while wielding a knife. Presently, defendant County of Lancaster moves to dismiss all claims against them because their employees had no part in the shooting, which is required for a *Monell* civil rights action. The Court grants the County's Motion to Dismiss because the County's 911 dispatchers did not have personal involvement with the alleged civil rights violation, the killing of Ricardo, as required by *Monell*.

**Factual Background**

      On September 13, 2020, Ricardo Muniz, who had schizophrenia and bipolar disorder, was having a mental health crisis at his family's home. Ricardo's sister called 911, explained Ricardo's issues, and requested help "with [] bringing [Ricardo] to the hospital." (ECF #1, Complaint, ¶ 37-40.) The County's 911 dispatchers dispatched police officers to the scene, allegedly failed to "give the police officers adequate information to deal with Ricardo's mental health crisis," and failed to "dispatch a crisis intervention team to adequately deal with the call

they received." (*Id.* at ¶ 95-6.)[1] Plaintiff also alleges that all defendants knew or should have known of Ricardo's issues given that they "had multiple interactions with Ricardo and his family before [the incident]." (*Id.* at ¶ 33; ¶ 34 ("on at least five other occasions since 2019, including one just few weeks earlier….")

Upon police arrival, Ricardo went to his room to "retrieve[] a knife that he had kept for self-defense," and then ran outside of his home towards the police while wielding the knife. (*Id.* at ¶ 25-6.) Ricardo was shot four times to his death. (*Id.* at ¶ 27.) Plaintiff alleges that the police shot Ricardo an excessive amount of times, and failed to use non-lethal alternatives such as a taser or "bean-bag gun" to deescalate the situation. (*Id.* at ¶ 27, 29.)

Plaintiff brings this action against the City of Lancaster, the County of Lancaster, and various City of Lancaster police officers. Against the movant in this Motion to Dismiss, Plaintiff brings four Counts against the County: Count III (42 U.S.C. § 1983 *Monell* Municipal Liability- Policy and Practice); Count IV (42 U.S.C. § 1983 Unreasonable Denial of Medical Care – *Monell* Liability); Count V (Negligent hiring, Training, Supervision, And Monitoring); and Count VII (42 PA.C.S.A. § 8309). Plaintiff agrees to dismiss the latter two counts, but contests the dismissal of the two *Monell* claims against the County.

## Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable

---

[1] The County of Lancaster's liability is based on the allegations that they employee the 911 dispatchers who took the 911 call, dispatched the police, and the County's intertwined relationship with the City of Lancaster who employees the police officers.

inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

In our analysis of a motion to dismiss, the Court of Appeals allows us to also consider documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## **Analysis**

The Constitutional harm in this case is the tragic death of Mr. Ricardo Muñoz. To successfully assert a *Monell* section 1983 claim for a civil rights violation "a plaintiff must show 'a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law.'" *Valenzeula v. Roselle*, 2021 WL 1667473, *2 (E.D. Pa. April 28, 2021) (citing *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). "An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondent superior." *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006) (citation omitted); *see also Rose v. Adams Cnty. Pa.*, 2014 WL 1321112 (M.D. Pa. April 1, 2014) (Report and Recommendation) ("It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.") (citation omitted).

Thus, municipal liability attaches only when "'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Monell v. Dept. of Soc. Serv. of New York City*, 436 U.S. 658, 694 (1978).

Plaintiff asserts that the County's policies, practices, customs, and training, along with their "apparent agents," the City's police officers, were responsible for Ricardo's death. Further, plaintiff argues that the County and City "were engaged in a joint venture in responding to the 911 call," the police "would not have been at the scene and would not have responded in the way [they] did but for the County's instructions and direction," the County "failed to dispatch a crisis intervention team," and failed to "place[] a hazard on the family's home for future service calls." (ECF #18, Plaintiff Motion to Dismiss Opposition.)

Nevertheless, plaintiff fails to point to any County employee who had personal involvement in the alleged wrongdoing—the shooting—nor does plaintiff point to any policy, practice, custom, or training deficiency that the County had in place that was involved with the shooting. The County of Lancaster does not employ the City of Lancaster's police officers or anyone who was at the scene of the shooting. The County's only involvement in this case is the actions of their 911 dispatchers who dispatched the police to the scene and provided information to the police in doing so. The dispatchers had no personal involvement in the later shooting of Ricardo.

Additionally, it is not the County's purview, who only employs the 911 dispatchers, to determine whether City police should carry non-lethal equipment. The County may not be held responsible for the tactical decisions of City police officers who are at the scene of an incident. Lastly, plaintiff does not cite to any cases that directly supports her proposition of holding the County liable.

### Conclusion

Accordingly, plaintiff concedes to the dismissal of two of the four Counts against the County, and the Court dismisses the remaining two *Monell* Counts against the County because the County did not have an employee who had personal involvement in the alleged Constitutional harm, the shooting of Ricardo, nor did the County have a policy, practice, custom, or training deficiency that caused the police to shoot Ricardo. Therefore, the County's Motion to Dismiss is Granted and the County is dismissed from the case.

BY THE COURT:

*/s/ Jeffrey L. Schmehl*
**JEFFREY L. SCHMEHL, J.**