**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MIGUELINA PENA, Individually and as Independent Administrator of the Estate of RICARDO MUNOZ, Deceased, | : <br> : <br> : |
| Plaintiffs, | : |
| | : |
| v. | :    CIVIL ACTION |
| | :    DOCKET NO. 21-00590 |
| CITY OF LANCASTER, JARRAD BERKIHISER, KARSON ARNOLD and, COUNTY OF LANCASTER, PENNSYLVANIA, | : <br> : <br> : <br> : |
| | : |
| Defendants. | : |

## <u>ORDER</u>

Now, this _____ day of _____ 2022, upon consideration of the Motion of Defendants, the City of Lancaster, Chief Jarrad Berkihiser, and Officer Karson (hereinafter "City Defendants") for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), and any response thereto, it is hereby **ORDERED** and **DECREED** that City Defendants' Motion is **GRANTED** and Counts I, II, and IV through XII of the Complaint (ECF No. 1) are dismissed *with prejudice*.

By the Court:

_____
JEFFREY L. SCHMEHL, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MIGUELINA PENA, Individually and as    :
Independent Administrator of the Estate of  :
RICARDO MUNOZ, Deceased,        :
                    Plaintiffs,   :
                           :
          v.                :   CIVIL ACTION
                           :   DOCKET NO. 21-00590
CITY OF LANCASTER, JARRAD      :
BERKIHISER, KARSON ARNOLD and,  :
COUNTY OF LANCASTER,        :
PENNSYLVANIA,              :
                           :
                 Defendants.  :

## THE CITY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants, the City of Lancaster, Chief Jarrad Berkihiser, and Officer Karson Arnold (collectively "the City Defendants"), by and through their attorneys, MacMain, Connell & Leinhauser, LLC, hereby file the following Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) to Counts I, II, and IV through XII of Plaintiff's Complaint (ECF No. 1).

For the reasons set forth in the City Defendants' Brief in Support, which is fully incorporated as if set forth at length herein, Plaintiff's federal claims of Excessive Force (Count I), *Monell* (Count II), Failure to Provide Medical Care (Count IV), violation of the Americans with Disabilities Act (Count IX), and state law claims for Negligent Hiring, Training, Supervision, and Monitoring (Count V), Battery (Count VI), Wrongful Death (VII), and Civil Rights Violation Pursuant to 42 Pa. C.S.A. § 8309 (Count VIII) brought on behalf of Ricardo Munoz fail as a matter of law.  Similarly, for the reasons set forth in the City Defendants' Brief in Support, which is fully incorporated as if set forth at length herein, Plaintiff's federal claim of

Unlawful Detention (Count XI), and state law claims of Intentional Infliction of Emotional

Distress (Count X), and Battery (Count XII) brought on behalf of herself fail as a matter of law.

 WHEREFORE, the City Defendants respectfully request that This Honorable Court grant

their Motion for Judgment on the Pleadings and dismiss Counts I, II, and IV through XII of

Plaintiff's Complaint (ECF No. 1) pursuant to Fed. R. Civ. P. 12(c), *with prejudice.*

   Respectfully submitted,

   **MacMain, Connell & Leinhauser, LLC**


Dated: <u>February 10, 2022</u>  By: *<u>/s/ David J. MacMain</u>*
        David J. MacMain
        Janelle E. Fulton
        Attorney I.D. Nos. 59320/80027
        433 W. Market Street, Suite 200
        West Chester, PA 19382
        *Attorneys for Defendants*
        *The City of Lancaster, Chief Berkihiser, and*
        *Officer Arnold*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MIGUELINA PENA, Individually and as    :
Independent Administrator of the Estate of    :
RICARDO MUNOZ, Deceased,    :
               Plaintiffs,    :
                       :   CIVIL ACTION
       v.    :   DOCKET NO. 21-00590
                       :
CITY OF LANCASTER, JARRAD    :
BERKIHISER, KARSON ARNOLD and,    :
COUNTY OF LANCASTER,    :
PENNSYLVANIA,

              Defendants.

**BRIEF IN SUPPORT OF THE CITY DEFENDANTS'**
**<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

                                **MacMain, Connell & Leinhauser, LLC**

Dated: <u>February 10, 2022</u>      By:    <u>*/s/ David J. MacMain*</u>
                                David J. MacMain
                                Attorney I.D. No. 59320
                                Janelle E. Fulton
                                Attorney I.D. No. 80027
                                433 W. Market Street, Suite 200
                                West Chester, PA 19382
                                *Attorneys for Defendants The City of Lancaster,*
                                *Chief Berkihiser, and Officer Arnold*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

SUMMARY OF FACTS ............................................................................................. 2

PROCEDURAL HISTORY ........................................................................................ 4

STANDARD OF REVIEW ......................................................................................... 5

ARGUMENT .............................................................................................................. 6

    A.  Plaintiff's Excessive Force Claim Fails. ......................................................... 6

    B.  Officer Arnold Is Entitled to Qualified Immunity. ........................................ 10

    C.  Plaintiff's Substantive Due Process Claim Fails. ......................................... 14

    D.  Plaintiff's Unreasonable Denial of Medical Care Claim Fails. ..................... 15

    E.  Plaintiff's Americans with Disabilities Act Claim Fails................................ 17

        1.  Plaintiff's Alleged ADA Claim Must be Dismissed. ............................... 17

        2.  Plaintiff is Not Entitled to Compensatory Damages. ..................................... 20

    F.  Plaintiff's *Monell* Claims Against the City Fail. ......................................... 21

        1.  No Violation – No *Monell* (Counts II, IV, V, and XI). .................................... 23

        2.  *Monell* claim—alleged use of force (Count II). ........................................... 23

        3.  *Monell* Claim—Alleged Negligent Hiring (Count V) Fails........................... 25

    G.  Plaintiff's Claims Against Chief Berkihiser Must be Dismissed...................... 26

    H.  Plaintiff's Complaint Fails to State a Claim for Violation of 42 Pa. C.S.A. § 8309 (Count VIII) ......................................................................................................... 26

    I.  Plaintiff's Intentional State Law Claims Brought on Behalf of Herself and Munoz Fail.. 27

    J.  Defendants Are Immune from Plaintiff's State Law Negligence Claims......................... 28

    K.  Plaintiff's Claim for Punitive Damages Must be Dismissed. ........................... 29

CONCLUSION............................................................................................................. 30

# **TABLE OF AUTHORITIES**

## **Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 5

*Ball v. Bower,* 2013 U.S. Dist. Lexis 167289, at *1 (M.D. Pa. Aug. 29, 2013) ........................ 2, 6

*Bartlett v. New York State Bd. of Law Examiners,* 226 F3d 69 (2d Cir. 2000) .......................... 17

*Beers-Capitol v. Whetzel,* 256 F.3d 120 (3d Cir. 2001) ................................................ 21

*Bircoll v. Miami-Dade Cty.,* 480 F.3d 1072 (11th Cir. 2007) ........................................... 19

*Bland v. City of Newark*, 900 F3d 77 (3d Cir. 2018) ................................................... 11

*Board of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397 (1997) .............................. 22, 26

*Brookins v. City of Pittsburgh*, C.A. No. 12-1429, 2014 U.S. Dist. LEXIS 20602,
     at *1 (W.D. Pa. Jan. 29, 2014) .................................................................. 13

*Brown v. United States*, 256 U.S. 335 (1921) ........................................................ 8, 22

*Brown-Dickerson v. City of Phila.,* 2016 U.S. Dis. LEXIS 54624 *1 (E.D. Pa. Apr. 25, 2016)... 27

*Brummell v. City of Harrisburg,* 2010 U.S. Dist. LEXIS *1 (M.D. Pa. Sept. 30, 2010).............. 28

*Bryce v. City of York,* 528 S. Supp. 2d 504 (M.D. Pa. 2007)......................................... 15

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006)........................................ 6

*C.N. v. Ridgewood Bd. of Ed.,* 430 F.3d 159 (3d Cir. 2005) ......................................... 26

*Cacciatore v. City of Phila.*, 2005 U.S. Dist. LEXIS 19064, *1, (E.D. Pa. Sept. 1, 2005) ......... 22

*City of Canton v. Harris,* 489 U.S. 378 (1989)................................................... 22, 23

*Carswell v. Borough of Homestead,* 381 F.3d 235 (3d Cir. 2004) ................................. 13, 22

*City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981) ...................................... 30

*City of Tahlequah v. Bond,* 142 S. Ct. 9 (2021)............................................ 10, 12, 13

*Clark v. Conahan,* 737 F. Supp. 2d 239 (M.D. Pa. 2010) .............................................. 6

*Commonwealth v. Sinnott,* 30 A.3d 1105 (Pa. 2011)................................................... 27

*Connick v. Thompson,* 131 S. Ct. 1350 (2011) ...................................................... 22

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)................................................. 15

*Cunningham v. Shelby County, TN,* 994 F.3d 761 (6th Cir. 2021)................................ 8, 9, 12, 13

*Devatt v. Lohenitz,* 338 F. Supp. 2d 588 (E.D. Pa. 2004)........................................... 29

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018)........................................... 11, 12

*El v. City of Pittsburgh,* 975 F.3d 327 (3d Cir. 2020)............................................ 2, 6

*Farmer v. Brennan,* 511 U.S. 825 (1994) ............................................................ 16

*Garcia v. County of Bucks*, 155 F. Supp. 2d 259 (E.D. Pa. 2001)..................................... 22

*Garza v. City of Donna,* 2017 U.S. Dist. LEXIS 206958 *1 (S.D. Tex. Dec. 15, 2017) .............. 16

*Gjeka v. Delaware Cnty. Cmty. Coll.,* 2013 WL 2257727, at *1 (E.D. Pa. May 23, 2013) ......... 29

*Gonzalez v. City of Bethlehem,* 1993 U.S. Dist. LEXIS 13050 *1 (E.D. Pa. July 12, 1993) ....... 29

*Graham v. Connor,* 490 U.S. 386, 388 (1989) ..................................................... passim

*Haberle v. Troxell*, 885 F.3d 171 (3d Cir. 2018) ................................................ 17, 18

*Haberle v. Troxell.* 2016 U.S. Dist. LEXIS 42081, *1 (E.D. Pa. Mar. 30, 2016) ................ 18, 20

*Hainze v. Richards,* 207 F.3d 795 (5th Cir. 2000).................................................. 18

*Hogan v. City of Easton,* 2004 U.S. Dist. LEXIS 16189 *1 (E.D. Pa. Aug. 17, 2004)............... 18

*Holmes v. City of Phila.,* 2005 U.S. Dist. LEXIS 16116, *1 (E.D. Pa. Aug. 4, 2005 ).............. 28

*In re Gibbons*, 2020 U.S. App. LEXIS 12707, *1 (3d Cir. April. 21, 2020)........................ 11, 12

*Joyner v. Sch. Dist. of Phila.,* 313 F. Supp. 2d 495 (E.D. Pa. 2004) ............................... 29

*Kazatsky v. King David Memorial Park,* 515 Pa. 183 (1987).......................................... 28

*Kentucky v. Graham,* 473 U.S. 159 (1985)..................................................................... 26

*Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999) ................................................ 30

*Lakits v. York,* 258 F. Supp. 2d 401 (E.D. Pa. 2003) ..................................................... 28

*Lamont v. New Jersey*, 637 F.3d 177 (3d Cir. 2011) ...................................................... 13

*Lane v. City of Camden*, 2015 U.S. Dist. LEXIS 127152, *1 (D.N.J. Sept. 23, 2015) ............ 7,13

*Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987)................. 16

*Lindstrom v. City of Corry*, 763 A.2d 394 (Pa. 2000) ..................................................... 29

*Malley v. Briggs*, 475 U. S. 335 (1986) ......................................................................... 10

*Manigault v. King*, 339 F. App'x 229 (3d Cir. 2009) ...................................................... 13

*Martinez v. Chavez*, 538 U.S. 760 (2003) ...................................................................... 15

*McCray v. City of Dothan,* 169 F. Supp. 2d 1260 (M.D. Ala. 2001) ................................ 19

*McDonald v. Franklin Twp.,* 2014 U.S. Dist. LEXIS 60254, *1 (D.N.J. Apr. 30, 2014) ........... 10

*Miller v. Reading Police Dep't*, No. 18-5178, 2019 U.S. Dist. LEXIS 99702, *1
(E.D. Pa. June 13, 2019) ..................................................................................... 5, 6

*Mullenix v. Luna*, 577 U. S. 7 (2015)............................................................................. 11

*Mullins v. Cyranek,* 805 F.3d 760 (6th Cir. 2015)................................................... 10, 11

*Natale v. Camden Cnty. Corr. Facility,*318 F.3d 575 (3d Cir. 2003) ............................... 15

*Pace v. Capobianco,*283 F.3d 1275 (11th Cir. 2002) ........................................................ 9

*Pearson v. Callahan*, 555 U. S. 223 (2009)..................................................................... 10

*Pena v. City of Lancaster*, No. 21-cv-00590 (E.D. Pa. Jan. 4, 2022) ................................ 6

*Pettit v. Namie,* 931 A.2d 790 (Cmwlth. Ct. 2007) ...................................................... 28

*Phillips v. Transunion, LLC*, 2012 U.S. Dist. LEXIS 58750, at *1 (E.D. Pa. April 25, 2012) ...... 5

*Plakas v. Drinski*, 19 F.3d 1143 (7th Cir. 1994)............................................................. 10

*Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021)................................................... 10, 11

*Robinson v. Fair Acres Geriatric Ctr.,* 722 F. App's 194 (3d Cir. 2018) ...................... 26

*S.H. ex rel. Curell v. Lower Merion Sch. Dist.,* 729 F3d 248 (3d Cir. 2013) ..................... 20, 21

*Sacko v. University of Penn.*, 2014 U.S. Dist. LEXIS 77080, *1 (E.D. Pa. June 5, 2014).......... 14

*Sameric Corp. v. City of Phila.*, 142 F.3d 582 (3d Cir. 1998).......................................... 29

*Santiago v. City of Harrisburg,* 2020 U.S. Dist. LEXIS 50359, *1 (M.D. Pa. 2020) ........... 22, 23

*Schorr v. Borough of Lemoyne*, 243 F. Supp. 2d 232 (M.D. Pa. 2003)......................... 17

*Scott v. Harris*, 550 U.S. 372 (2007) .............................................................................. 6

*Smith v. Wade*, 461 U.S. 30 (1983).................................................................................. 30

*Tennessee v. Garner*, 471 U.S. 1 (1985)............................................................... 7, 9, 15

*Thomas v. Harrisburg City Police Dep't,* 2021 U.S. Dist. LEXIS 32938 *1
(M.D. Pa. Feb. 23, 2021) ................................................................................ 21, 25

*Thompson v. Williamson County*, 2019 F.3d 555 (6th Cir. 2000) .................................. 19

*Tindell v. Beard*, 351 F. App'x 591 (3d Cir. 2009) ....................................................... 6, 8

*United States v. Lanier,* 520 U.S. 259 (1997)................................................................. 14

*Wheeler v. City of Phila.*, 367 F. Supp. 2d 737 (E.D. Pa. 2005) ..................................... 15

*Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir. 1989) .............................. 23

*Williams v. City of Scranton*, No. 3:10-CV-388, 2013 U.S. Dist. LEXIS 46459,
at *1 (M.D. Pa. Apr. 1, 2013) ........................................................................ 8, 14

*Wingard v. Pa. State Police,* 2013 U.S. Dist. LEXIS 97800, *1 (W.D. Pa. June 21, 2013) ........ 18

*Woloszyn v. County of Lawrence*, 2005 U.S. App. LEXIS 1417, *1 (3d Cir. Jan. 28, 2005)....... 22

*Young v. Sunbury Police Dep't*, 160 F. Supp. 3d 802 (M.D. Pa. 2016)......................... 17

*Zavac v. Collins,* 2017 U.S. Dist. LEXIS 117664, *40 (M.D. Pa. July 27, 2017)....................... 18

**Statutes**

18 Pa. C.S. § 505 (2)(b) ............................................................................................ 7, 28
18 Pa. C.S.A. § 2710 ...................................................................................................... 27
42 Pa. C.S. § 8542 .......................................................................................................... 28
42 Pa. C.S.A. § 8309 ...................................................................................................... 27
42 Pa. C.S.A. § 8541 ...................................................................................................... 29
42 Pa. C.S.A. § 8542 ...................................................................................................... 29
42 Pa. C.S.A. § 8545 ...................................................................................................... 29
42 U.S.C. § 12132 ........................................................................................................... 17
42 U.S.C. § 1983 ...................................................................................... 21, 22, 23, 30

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................. 5

Defendants, the City of Lancaster (the "City"), (former) Chief Jarrad Berkihiser, and Officer Karson Arnold ("Officer Arnold") (collectively "the City Defendants"), by and through their attorneys, MacMain, Connell & Leinhauser, LLC, hereby file the following Brief in Support of their Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) to Counts I, II, IV through XII of Plaintiff's Complaint (ECF No. 1).

## I.    <u>INTRODUCTION</u>

This is a simple case, because the ***entire*** underlying incident was captured clearly by Officer Arnold's body worn camera ("BWC video"), which is a matter of public record.  *See* BWC Video, a copy of which is attached as Exhibit A.

Plaintiff bases her claims against the City Defendants on the following "visible fiction" she has created in the Complaint that distorts the actual events: Plaintiff claims that Officer Arnold failed to follow proper procedure by not attempting to use his taser and, "against all legitimate police training, instead ***escalated*** the situation through his ***threatening confrontation*** of Munoz, who ran down the steps of his mother's home ***and not at Defendant ARNOLD***." Compl. (ECF No. 1) at p. 2 (emphasis added). Officer Arnold's BWC video[1] directly contradicts Plaintiff's account of the incident, and consequently, her claims against the City Defendants.

Plaintiff's Complaint, the City Defendants' detailed Answer (ECF No. 19), the recording of Plaintiff's daughter's 911 call (which is publicly available), and most importantly, the irrefutable BWC video, clearly demonstrate what Lancaster County District Attorney Heather Adams concluded: "There's no question, ***no question*** that the officer was justified in the use of deadly force."  *See* https://www.wgal.com/article/lancaster-county-district-attorney-to-release-findings-on-lancaster-police-shooting/34368998#;

---

[1] The City Defendants reference the BWC video in their Answer (ECF No. 19) on p. 1, n.1.

https://www.abc27.com/news/local/lancaster/lancaster-da-to-release-findings-of-investigation-into-shooting-of-ricardo-munoz/; 911 call audio at

https://www.fox43.com/article/news/local/lancaster-police-shooting-ricardo-munoz-district-attorney-use-of-force/521-36fc9e59-67ff-4cf9-b7fc-048da5258cf4 ("911 call") (attached hereto as Exhibit B); BWC video released by the Lancaster Bureau of Police on September 14, 2020 at multiple media outlets, including Lancaster police release body cam footage of fatal shooting involving an officer - YouTube (also produced to Plaintiff and attached hereto as Exhibit A).

The City Defendants' Answer and the publicly-available BWC video clearly and irrefutably depict the actual events of the incident and mandate the dismissal of Plaintiff's claims. *El v. City of Pittsburgh,* 975 F.3d 327 (3d Cir. 2020); *Ball v. Bower,* 2013 U.S. Dist. Lexis 167289, at \*17-\*18 (M.D. Pa. Aug. 29, 2013).

## II.   **SUMMARY OF FACTS**

On September 13, 2020, decedent Ricardo Munoz, who had a history of psychotic disorder, paranoid schizophrenia, catatonic schizophrenia, bipolar disorder, and "other persistent mood disorders," became aggressive toward his mother, Plaintiff Miguelina Pena.  Plaintiff's daughter (and Munoz's sister) called 911 to request help and reported that Munoz had punched a car window and was attempting to break into Plaintiff's home.  Compl. (ECF Doc. 1) at Intro.; ¶¶ 3, 23, 37; 911 call (Exhibit B).  Officer Arnold was dispatched to the residence.  When Officer Arnold arrived, Munoz "retrieved a knife that he had kept for self-defense." *Id.* at ¶ 25.  The rest of the incident is captured on Officer Arnold's BWC, which shows:

- Officer Arnold calmly walked up to Plaintiff's residence in the 300 block of Laurel Street (BWC video at 0:00-0:37);

- While Officer Arnold was attempting to speak to Plaintiff, Munoz suddenly and without warning, burst out of the residence, pushing his mother aside, brandishing

a large knife above his head, screaming, and charging directly at Officer Arnold (BWC video at 0:37);

- Officer Arnold had no opportunity to speak to Munoz prior to the unprovoked attack (BWC video at 0:37-0:42);

- Officer Arnold attempted to retreat by running away from Munoz, but Munoz continued to chase Officer Arnold with the knife (BWC video at 0:38-0:42);

- Officer Arnold turned and saw that Munoz was closing the distance between them (BWC video at 0:40);

- When Munoz closed the distance to approximately seven (7) feet, Officer Arnold unholstered his weapon and fired four (4) shots in rapid succession, each striking Mr. Munoz (BWC video at 0:42);

- Officer Arnold had *less than four (4) seconds* from the time Munoz exited the home until Officer Arnold fired to react to this surprise, violent, and deadly attack by a knife-wielding Munoz (BWC video at 0:38-0:42);

- Officer Arnold immediately radioed: "shots fired, shots fired!" (BWC video at 0:44);

- Sirens can be heard approaching the scene less than one (1) minute after Officer Arnold fired his weapon (BWC video at 1:40);

- Officer Arnold specifically requested EMS one (1) minute after he fired his weapon.  (BWC video at 1:55);

- It was clear that Munoz was deceased (BWC video at 0:44-1:55);

- There was no opportunity for Officer Arnold to attempt to "deescalate" the situation (BWC video at 0:00-0:42);

- Contrary to Plaintiff's allegation that Officer Arnold failed to try less than lethal force (Compl. at ¶ 29), there was no opportunity (or legal duty) for Officer Arnold to use less than lethal force, such as a taser or bean-bag gun (BWC video at 0:00-0:42).

*See* BWC video (Exhibit A).



## III.   **PROCEDURAL HISTORY**

Plaintiff filed a Complaint on February 8, 2021, asserting twelve (12) claims against

the City Defendants and Co-Defendant County of Lancaster ("the County").  On April 8,

2021, the County Defendants filed a Motion to Dismiss (ECF No. 18), which this Court

granted by Order dated January 4, 2022 (ECF No. 42).

Plaintiff's Complaint asserts the following claims against the City Defendants on behalf

of Munoz:

1.    Count I: Excessive Force against Officer Arnold;
2.    Count II: *Monell* liability against the City;
3.    Count IV: Unreasonable Denial of Medical Care against all Defendants;
4.    Count V: Negligent Hiring, Training, Supervision, and Monitoring against the City;
5.    Count VI: State Law Battery Claim against Officer Arnold;
6.    Count VII: State Law Wrongful Death against the City Defendants;
7.    Count VIII: Civil Rights Violation Pursuant to 18 Pa. C.S.A. § 8309 against all Defendants; and
8.    Count IX: A Violation of the Americans with Disabilities Act against the City.

4

Plaintiff brings the following claims on behalf of herself:

1.    Count X: State Law Intentional Infliction of Emotional Distress against the City and Officer Arnold;

2.    Count XI: Unlawful Detention Pursuant to Section 1983 against the City and Unknown Police Officers; and

3.    Count XII: State Law Claim of Battery against the City and Unknown Police Officers.

The City Defendants filed a detailed Answer to the Complaint on April 12, 2021. (ECF No. 19).  The City Defendants now file their Motion for Judgment on the Pleadings and this supporting brief respectfully requesting that this Court dismiss all of the claims against them as Plaintiff's Complaint fails to state any factually plausible claim.

## IV.    <u>STANDARD OF REVIEW</u>

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c).  The standard used in deciding a motion for judgment on the pleadings is identical to the standard of review under Rule 12(b)(6).  *Miller v. Reading Police Dep't*, No. 18-5178, 2019 U.S. Dist. LEXIS 99702, at *3-4 (E.D. Pa. June 13, 2019) (Schmehl, J.).  "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings."  *Phillips v. Transunion, LLC*, 2012 U.S. Dist. LEXIS 58750, at *3 (E.D. Pa. April 25, 2012).

As with a motion to dismiss under Rule 12(b)(6), to survive a motion for judgment on the pleadings, a complaint must contain factually plausible averments that the alleged wrongdoing occurred and that there is "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint that fails to present factually plausible claims or which presents claims that are foreclosed as a matter of law should be dismissed.  *Id.* at 678.

"Importantly, '[i]n evaluating a motion to dismiss, we may consider documents that are

attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Miller*, 2019 U.S. Dist. LEXIS 99702, at *5 (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citations omitted)); *see Pena v. City of Lancaster*, No. 21-cv-00590 (E.D. Pa. Jan. 4, 2022) (Schmehl, J.) (same); *Clark v. Conahan*, 737 F. Supp. 2d 239, 252 (M.D. Pa. 2010) (citations omitted) (noting that a court may consider matters outside the compliant so long as the matters are part of the public record).

Finally, binding authority from the Supreme Court and Third Circuit make clear that, where critical events at issue have been captured on video, courts ***must*** view the facts in the light depicted by the video. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *see El v. City of Pittsburgh,* 975 F.3d 327 (3d Cir. 2020) (noting that appellate court must accept finding of facts by lower court unless blatantly contradicted by the video); *Ball v. Bower,* 2013 U.S. Dist. Lexis 167289, at *17-*18 (M.D. Pa. Aug. 29, 2013) (Carlson, M.J.) ("where critical events at issue have been captured on videotape, the Court is obliged to consider the videotaped evidence in determining whether there is any genuine dispute as to material facts."). This principle applies with particular force to excessive force claims that involve encounters that are captured on video. *Tindell v. Beard*, 351 F. App'x 591 (3d Cir. 2009). Where a video refutes a plaintiff's claim of excessive force, dismissal is entirely appropriate. *Id.*

## V. __ARGUMENT__

### A. __Plaintiff's Excessive Force Claim Fails.__

In order to prevail on an excessive force claim, a plaintiff must prove that the force used was objectively unreasonable under the Fourth Amendment. The *Graham* Court instructed that "the 'reasonableness' of a particular use of force must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 388, 396 (1989). In particular, the Court cautioned that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments --in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Accordingly, a court should consider the specific circumstances of the case when evaluating the reasonableness of an officer's use of force. In particular, the *Graham* Court provided three main factors to consider: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest. *Id.* at 396.

Under Pennsylvania law, officers are permitted to use deadly force in the performance of their duties in making an arrest or preventing an escape, if such force is necessary to protect against death or serious bodily injury. 18 Pa. C.S. § 505 (2)(b). Likewise, under federal law, namely, *Tennessee v. Garner*, 471 U.S. 1 (1985) and its progeny, an officer is permitted to use deadly force if the officer has probable cause to believe a suspect poses a significant threat of death or serious physical injury to the officer or others.

*Lane v. City of Camden*, a case from the District of New Jersey, is strikingly similar to the present case. 2015 U.S. Dist. LEXIS 127152, *1 (D.N.J. Sept. 23, 2015). There, officers responded to the residence of a man who was suffering from a schizophrenic episode, based upon information from his mother, and attempted to coax him out of his bedroom safely, but they were unsuccessful. *Id.* at *3-*7. Instead, the man, holding an eight-inch knife, lunged quickly at the officers, who were only two to three feet away. *Id.* Two officers discharged their firearms, shooting the individual ten times, including once in his head. *Id.* *7. The Court granted

summary judgment in favor of the officers, finding their use of deadly force was reasonable when assaulted with deadly force without responding with lesser force first. *Id.* at *25. The Court explained that proper inquiry is not whether the incident could have been handled differently, but whether the Officers' conduct violated the Fourth Amendment. *Id.*

In another factually similar case, the Court held that no reasonable juror could find that the officers' use of deadly force violated the decedent's Fourth Amendment rights where the undisputed facts show that the decedent "rapidly approached [the officer] with a knife, ignored the officers' warnings to stop and drop the knife, and was within several feet of Officer Smith when she was shot." *Williams v. City of Scranton*, No. 3:10-CV-388, 2013 U.S. Dist. LEXIS 46459, at *18-19 (M.D. Pa. Apr. 1, 2013).

Deference to the events captured by video applies with particular force to excessive force claims. *Tindell v. Beard*, 351 F. App'x 591 (3d Cir. 2009). Specifically, where a videotape refutes a plaintiff's claim of excessive force, dismissal is entirely appropriate. *Id.* Moreover, Courts are discouraged from reliance on slide by slide "screen shots" to analyze video footage of an actual deadly incident as "violative of the teaching in *Graham* against judging the reasonableness of a particular use of force based on 20/20 hindsight." *Cunningham v. Shelby County, TN,* 994 F.3d 761, 766-67 (6th Cir. 2021). Specifically, an officer's "perspective [does] no include leisurely stop-action viewing of the real-time situation" that are often tense, uncertain, and rapidly evolving. *Id.* at 767; *Graham;* 490 U.S. at 396-97. Indeed, as the United States Supreme Court noted a century ago: "***[d]etached reflection cannot be demanded in the presence of an uplifted knife.***" *Brown v. United States*, 256 U.S. 335, 343 (1921) (emphasis added).

Under the terms of *Graham* and *Garner* as established by the Supreme Court, and the authority discussed above, the use of force by Officer Arnold was constitutionally permitted, and

8

absolutely justified.  Moreover, like the Sixth Circuit in *Cunningham*, this Court need not credit Plaintiff's attempt to recharacterize Munoz's conduct as "non-threatening." Officer Arnold made the split-second decision to discharge his weapon in defense of his life in response to Munoz's unprovoked and deadly attack with a knife.

Based on the totality of the circumstance in this matter, Officer Arnold's use of deadly force was clearly constitutionally permissible to defend himself against the attempted deadly force of Munoz.  As seen in the BWC video, Officer Arnold approached calmly, stayed a reasonable distance from the residence, and inquired about Munoz's location. Unlike *Lane*, Officer Arnold did not have the opportunity to speak with Munoz before Munoz attacked. As Plaintiff admits, Munoz burst through his front door armed with a knife and rushed down the stairs towards Officer Arnold.  In response, Officer Arnold ***retreated*** from Munoz, who pursued him with the knife raised above his head to strike the Officer.  Fearing for his life, Officer Arnold discharged his firearm in quick succession on the rapidly approaching Munoz.[2]

Moreover, although Plaintiff claims Officer Arnold ***could have*** or ***should have*** used less than lethal force before resorting to deadly force, that is not the current state of the law. Courts across jurisdictions have declined to second guess tactical decisions even when in hindsight alternatives may have been effective.  *See Lane,* 2015 US. Dist. LEXIS 127152, *3 ("a jury does not automatically get to second-guess these life and death decisions, even though the plaintiff has…a plausible claim that the situation could have been handled differently"); *McDonald v. Franklin Twp.,* 2014 U.S. Dist. LEXIS 60254 (D.N.J. Apr. 30, 2014) (declining to "second-guess

---

[2] Plaintiff argues that Munoz was no longer a threat after the second shot, however*,* even if the threat posed by Munoz was neutralized after the second shot, which the City Defendants do not concede, the third and fourth shot were justified because they occurred "within the very few seconds" after Officer Arnold discharged his firearm the second time. *See e.g., Pace v. Capobianco,*283 F.3d 1275, 1282 (11th Cir. 2002).

whether alternative actions by police officers 'might conceivably have been available'" to avoid a shooting); *Plakas v. Drinski*, 19 F.3d 1143, 1148 (7th Cir. 1994) (if deadly force is justified under the Constitution, a police officer does not have a constitutional duty to use non-deadly alternatives first); *Mullins v. Cyranek,* 805 F.3d 760, 767 (6th Cir. 2015). As such, Officer Arnold was not required to attempt less than lethal force when confronted with the deadly force used by Munoz.

Therefore, Plaintiff's Complaint fails to present a factually plausible claim for excessive force against Officer Arnold and Count I must be dismissed.

### B.    Officer Arnold Is Entitled to Qualified Immunity.

Putting aside the fact that there was not a violation in the first instance, Officer Arnold is, at a minimum, entitled to qualified immunity, as it was not clearly established at the time of the incident – or even now – that the force used against the Munoz was constitutionally impermissible.

The doctrine of qualified immunity shields officers from civil liability so long as their conduct "does not violate ***clearly established*** statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U. S. 223, 231 (2009) (emphasis added).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U. S. 335, 341 (1986).  Office Arnold was not incompetent, and he did not violate the law.

Two recent unanimous decisions from the Supreme Court of the United States have clarified what it means for a right to be "clearly established." *See City of Tahlequah v. Bond*, 142 S. Ct. 9 (2021) (*per curiam*); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) (*per curiam*). The Court noted that "[w]e have repeatedly told courts not to define clearly established law at too high a level of generality" and emphasized that "[i]t is not enough that a rule be suggested by

10

then-existing precedent; the "'rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."'" *Bond*, 142 S. Ct. at 11 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).  "This requires a high 'degree of specificity.'"  *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 577 U. S. 7, 12 (2015) (*per curiam*)).  Such "'specificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Rivas-Villegas*, 142 S. Ct. at 8 (quoting *Mullenix*, 577 U. S. at 12).

To overcome qualified immunity, a plaintiff must demonstrate every reasonable official would understand that what he is doing is unlawful based only on the facts that were knowable to the defendant officer.  Indeed, the Supreme Court requires Plaintiff to identify a case that put Officer Arnold on notice that his specific conduct was unlawful in order to show a violation of clearly established law.  *Id.*; *see In re Gibbons*, 2020 U.S. App. LEXIS 12707 at *8 (3d Cir. April. 21, 2020) (noting that plaintiff bears the burden of "identify[ing] a case where an officer acting under similar circumstances [as the defendant officer] was held to have violated the [constitutional provision at issue].").

In evaluating whether a plaintiff has met this burden, the Court must determine whether a clearly establish right was established by: (1) binding Supreme Court precedent; (2) binding Third Circuit precedent; or (3) a "robust consensus of cases of persuasive authority in the Court of Appeals." *In re Gibbons*, 2020 U.S. App. LEXIS 12707 at *9 (quoting *Bland v. City of Newark*, 900 F3d 77, 87 (3d Cir. 2018)).  The facts of the cited precedent must present a sufficiently similar factual scenario to the scenario faced by the defendant officers at the "high 'degree of specificity'" that the Supreme Court precedent requires. *Id.* at *11 (quoting *Wesby,*

138 S. Ct. at 590).

Here, Plaintiff has not – and cannot – point to a single case that provides that a police officer who is suddenly and unexpectedly confronted with a 27 year-old man running out of a house brandishing a knife over his head, forcing the officer to run for his life and continuing to chase the officer, is not permitted to use deadly force to save his own life.

On the contrary, there are numerous factually-similar cases – including one of the recent United States Supreme Court decisions – where Courts have held that the defendant officer either acted reasonably or, at a minimum, was entitled to qualified immunity.

For example, in *Bond*, the decedent's ex-wife called police because the decedent was in her garage, intoxicated, and refused to leave. *Bond*, 142 S. Ct. at 10. The three officers who responded knew these facts. *Id.* As here, the incident was captured on video, which showed that the officers were at least six feet away from the decedent when he picked up a hammer, raised it high above his head, and "took a stance as if he was about to throw the hammer or charge at the officers." *Id.* at 10-11. In response, two officers fired their weapons, killing the decedent. *Id.* at 11. The Court held that, "[o]n this record, the officers plainly did not violate any clearly established law." *Id.*

Similarly, in a recent Sixth Circuit decision, the Court overturned the trial court's denial of summary judgment, granting qualified immunity to the officers. *Cunningham v. Shelby County, TN,* 994 F.3d 761, 766-67 (6th Cir. 2021). There officers responded to a call regarding a woman suffering from a mental illness or crisis who threatened to kill herself. *Id.* at 764. Dash camera video from the officers' vehicle captured the interactions upon arrival. *Id.* The video showed officers discharged their weapons eleven (11) times after the decent raised what was believed to be a .45 caliber pistol as she approached them. *Id.* The entire event took eleven (11)

seconds. *Id.* Plaintiff's attempt to redefine the actions of decedent as non-threatening were rejected by the court based on the video evidence. *Id.* at 765-66.

Here, Officer Arnold is protected by qualified immunity. First and foremost, the right Plaintiff seeks to vindicate ***is not clearly established***. On the contrary, a review of caselaw (and common sense) tells an officer that deadly force is constitutionally permitted when a suspect is wielding a knife in a threatening manner. *Bond*, 142 S. Ct. at 10-11; *Cunningham,* 994 F.3d at 766-67; *see Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011) (holding that state troopers acted reasonably when they ordered the suspect to show his hands and surrender but he refused and then suddenly pulled his right hand out of his waistband as if he were drawing a gun, and the troopers opened fire, killing him); *Manigault v. King*, 339 F. App'x 229 (3d Cir. 2009), *cert. denied,* 558 U.S. 1112 (2010) (holding that, when decedent charged officers from a distance of 15 feet with a knife in his hand, the officers' use of deadly force was reasonable); *Carswell v. Borough of Homestead*, 381 F.3d 235, 243-44 (3d Cir. 2004) (holding that the officer acted reasonably when he shot man who had escaped from police following multiple incidents of spousal abuse and ran at the officer in a darkened alley at full speed, even though the suspect was unarmed); *Lane v. City of Camden*, 2015 U.S. Dist. LEXIS 127152, *1, *7 (D.N.J. Sept. 23, 2015) (holding that use of deadly force was reasonable where a man suffering from a schizophrenic episode and holding an eight-inch knife lunged quickly at the officers and two officers discharged their firearms, shooting the individual ten times); *Brookins v. City of Pittsburgh*, Civil Action No. 12-1429, 2014 U.S. Dist. LEXIS 20602, at *16 (W.D. Pa. Jan. 29, 2014) (determining that officer did not act unreasonably in using deadly force when decedent "quickly approached" the officer "with the proverbial 'uplifted knife.'"); *Williams v. City of Scranton*, No. 3:10-CV-388, 2013 U.S. Dist. LEXIS 46459, at *18-19 (M.D. Pa. Apr. 1, 2013)

13

(holding that no reasonable juror could find that the officers' use of deadly force violated the decedent's Fourth Amendment rights where the undisputed facts show that the decedent "rapidly approached [the officer] with a knife, ignored the officers' warnings to stop and drop the knife, and was within several feet of [the officer] when she was shot.").

Moreover, if the Lancaster County District Attorney's Office and its detectives, with the benefit of time, reflection, research, and investigation, found "[t]here's no question, *no question* that the officer was justified in the use of deadly force," it cannot be said that "every" reasonable officer would have known that he or she was not permitted to do exactly what Officer Arnold did.  *See* https://www.wgal.com/article/lancaster-county-district-attorney-to-release-findings-on-lancaster-police-shooting/34368998#; https://www.abc27.com/news/local/lancaster/lancaster-da-to-release-findings-of-investigation-into-shooting-of-ricardo-munoz/.

As such, This Court should find that Officer Arnold is, at minimum, entitled to qualified immunity on Plaintiff's claims.

### C.   Plaintiff's Substantive Due Process Claim Fails.

An excessive force cannot be the basis of a substantive due process claim, pursuant to the "More-Specific-Provision-Rule." *See Sacko v. University of Penn.*, 2014 U.S. Dist. LEXIS 77080, \*12-13 (E.D. Pa. June 5, 2014) (Baylson, J.).  The "More-Specific-Provision-Rule" requires a constitutional claim that is covered by a specific constitutional provision to be analyzed under that standard, "not under the rubric of substantive due process." *Id.* at \*13 (citing *United States v. Lanier,* 520 U.S. 259, 272 n. 7 (1997); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998) (noting that, if plaintiff's claim is covered by the Fourth Amendment, substantive due process does not apply).

In *Graham*, the Supreme Court held that "*all* claims that law enforcement officers have

14

used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395 (emphasis in original); *see also Martinez v. Chavez*, 538 U.S. 760, 773 n. 5 (2003).

Here, even with all inferences in favor of Plaintiff, the Complaint clearly alleges that Munoz was seized when he forced Officer Arnold to use deadly force. *See Garner*, 471 U.S. at 7 ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."). Therefore, the "More-Specific-Provision Rule" applies to Plaintiff's substantive due process claims. *See, e.g., Wheeler v. City of Phila.*, 367 F. Supp. 2d 737, 746-47 (E.D. Pa. 2005) (Dalzell, J.); *Bryce v. City of York*, 528 S. Supp. 2d 504, 515-16 (M.D. Pa. 2007).

Therefore, Plaintiff's Complaint fails to present a factually plausible claim for a violation of Munoz's substantive due process rights, and any claim on this basis must be dismissed.

### D.   Plaintiff's Unreasonable Denial of Medical Care Claim Fails.

A police officer may be liable for the denial of medical assistance when there is: (1) a serious medical need and (2) acts or omissions by the police officer that indicate deliberate indifference to that need. *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference requires a showing that the defendant subjectively knows of and disregards an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). The defendant must "both be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 837. The deliberate indifference standard is met only when knowledge of the need for medical care is accompanied by the intentional refusal to provide that care. *Monmouth Cty. Corr.*

*Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987).

"Deceased persons have no medical needs. As a logical consequence, it is impossible for [a defendant's] alleged subjective and deliberate indifference to have any object (i.e., such as Decedent's medical needs)." *Garza v. City of Donna,* 2017 U.S. Dist. LEXIS 206958 *38 (S.D. Tex. Dec. 15, 2017).

Here, Officer Arnold immediately reported "shots fired," requested EMS, and sirens could be heard approaching less than a minute after Officer Arnold discharged his weapon.  It is undisputed that Munoz was deceased after sustaining four (4) gunshot wounds. Officer Arnold, responding officers, and an emergency medical technician from the Lancaster City Fire Bureau all confirmed this shortly after the shooting when each attempted to provide medical care. As a result, Munoz did not have any medical needs to which officers could be deliberately indifferent.

Further, contrary to the accusations of Plaintiff, Bureau officers, including Officer Arnold, were not deliberately indifferent to a possible medical need of Munoz prior to determining he was deceased. Officer Arnold recognized that an individual suffering a gunshot wound required medical treatment and immediately called for emergency medical personal. Finding him deceased, it was determined medical care would be futile. Only ***after*** ascertaining Munoz was deceased was the ***ambulance*** response was cancelled. Moreover, although the ambulance call was cancelled, emergency medical technicians from the local fire department did respond to the scene shortly after the shooting and confirmed Munoz was deceased.

Therefore, it can hardly be maintained that Bureau officers, including Officer Arnold, were deliberately indifferent to a medical need of Munoz when he was deceased. Therefore, Plaintiff's Complaint fails to present a factually plausible claim for an alleged unreasonable denial of medical care and Count IV must be dismissed.

16

E.    **Plaintiff's Americans with Disabilities Act Claim Fails.**

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified

individual with a disability shall, by reason of such disability, be excluded from participation in

or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

to discrimination by any such entity." 42 U.S.C. § 12132; *Bartlett v. New York State Bd. of Law*

*Examiners*, 226 F3d 69, 78 (2d Cir. 2000).  The Third Circuit has held that the protections of the

ADA apply when police officers make an arrest.  *Haberle v. Troxell*, 885 F.3d 171, 178 (3d Cir.

2018).

1.    **Plaintiff's Alleged ADA Claim Must be Dismissed.**

To succeed on an ADA claim, an individual must show they were subjected to

discrimination by the police during their arrest under one of two theories—wrongful arrest or

failure to accommodate.  *Id.* at 180; *Schorr v. Borough of Lemoyne*, 243 F. Supp. 2d 232, 237

(M.D. Pa. 2003); *Young v. Sunbury Police Dep't*, 160 F. Supp. 3d 802, 809-10 (M.D. Pa. 2016).

Plaintiff proceeds under the "reasonable accommodation" theory. This theory applies

when "police investigate and arrest a person with a disability for a crime unrelated to that

disability but fail to 'reasonably accommodate the person's disability in the course of

investigation or arrest, causing the person to suffer greater injury or indignity in that process than

other arrestees.'" *Young*, 160 F. Supp. 3d at 810.

The sufficiency of a complaint to state a claim based on the "reasonable accommodation"

theory was evaluated by this Court in *Haberle v. Troxell*.  2016 U.S. Dist. LEXIS 42081, *33

(E.D. Pa. Mar. 30, 2016) (Leeson, J.); *see also Hogan v. City of Easton*, 2004 U.S. Dist. LEXIS

16189 (E.D. Pa. Aug. 17, 2004) (finding a viable Title II claim because the situation was secure

when the officers arrived at the scene). In *Haberle*, the plaintiff contacted the police regarding

17

decedent, who was well known to have mental health problems, to report decedent was contemplating suicide. *Id.* at *2. Shortly after officers located decedent and knocked on the door of the residence, the decedent took his own life. *Id.* at *4.  Plaintiff then filed a claim pursuant to the ADA for the failure of the police to accommodate the decedent's mental health. *Id.*

Based on these facts, this Court addressed whether, and to what extent, the protections of the ADA apply to police activity under exigent circumstances, particularly when police are confronting armed, mentally ill individuals who may be violent. *Id.* In *Haberle*, this Court agreed with the Fifth Circuit that "[l]aw enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations." *Id.* (citing *Hainze v. Richards,* 207 F.3d 795, 801-02 (5th Cir. 2000)). It further found that "requir[ing] officers to factor in whether their actions are going to comply with the ADA in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents." *Id.* at *35-*36.

Sister jurisdictions have likewise found that exigent circumstances, such as those faced by Officer Arnold, are informative in the reasonableness analysis pursuant to the ADA. *See e.g., Zavac v. Collins,* 2017 U.S. Dist. LEXIS 117664, *40 (M.D. Pa. July 27, 2017); *Wingard v. Pa. State Police,* 2013 U.S. Dist. LEXIS 97800 (W.D. Pa. June 21, 2013)("where the incident presents an immediate danger because the individual is armed and charging at police, or the police have no information regarding the potential danger to others who may be present where a call has been made because of a 'tense situation,' then no reasonable accommodation of a disability may be required or possible."); *Bircoll v. Miami-Dade Cty.,*480 F.3d 1072, 1085-86 (11th Cir. 2007)(determination of viable Title II claim focuses on "whether, given criminal

activity and safety concerns, any modification of police procedures is reasonable before the police physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to public safety or officer's safety"); *McCray v. City of Dothan,* 169 F. Supp. 2d 1260, 1275 (M.D. Ala. 2001)(finding it *per se* reasonable "to disregard a suspect's disability until overriding concerns of public safety are ensured."), *aff'd in part and rev'd in part on other grounds*, 67 Fed. Appx. 582 (11th Cir. 2003).

Specifically, in *Thompson v. Williamson County*, the Sixth Circuit addressed a nearly identical situation as that faced by Officer Arnold. 2019 F.3d 555, 558 (6th Cir. 2000). In *Thompson,* the decedent was suffering from a mental health emergency. *Id.* While in route, the responding officer was informed that decedent was armed with a machete. *Id.* at 556. Upon his arrival, Decedent approached the officer with the machete raised over his head as if preparing to throw it at the officer. *Id.* The officer discharged his firearm causing the death of decedent. *Id.*

The court held that although the family's purpose, to transport the decedent to a medical facility, was relayed to the officers, it could not be achieved until the decedent was disarmed. *Id.* The court went on to explain that the officer's "failure to disarm, or take the decedent under control, was not because he was inadequately trained to deal with disabled individuals, but because the decedent threatened him with a deadly weapon before he could subdue him. Thus, if the decedent was denied access to medical services it was because of his violent, threatening behavior, not because he was mentally disabled." *Id.* at 558.

Like *Haberle* and *Thompson*, the accusations in the Complaint and factual allegations in the City Defendants' Answer make clear that at the time Officer Arnold arrived, the scene was not secure and the safety of himself, Plaintiff, and Munoz had not been established. Further, the facts here are more in favor of dismissal of an ADA claim than *Thompson,* insomuch as the

19

officer in *Thompson* was previously aware before his arrival that the decedent was armed.  Here, Officer Arnold was unaware Munoz was armed until Munoz burst through his front door to attack him with the knife. The fact that Munoz pursued Officer Arnold up the sidewalk with the knife poised to stab him makes it indisputable that the scene was not yet secure, and the safety of Officer Arnold, Munoz, and Plaintiff had not been established. These exigent circumstances demand dismissal of Plaintiff's ADA claim.

### 2.    <u>Plaintiff is Not Entitled to Compensatory Damages.</u>

Additionally, the Third Circuit found that compensatory damages for Title II claims are not available absent proof of "intention discrimination." *Id.* at 181 (citing *S.H. ex rel. Curell v. Lower Merion Sch. Dist.,* 729 F3d 248, 261 (3d Cir. 2013)). To prove intentional discrimination, the Third Circuit found a plaintiff must prove at least deliberate indifference. *Id.* "To plead deliberate indifference, a claimant must allege '(1) knowledge that a federally protected right is substantially likely to be violated…and (2) failure to act despite that knowledge.'" *Id.* Similar to a *Monell* claim, the Third Circuit found deliberate indifference is shown either through a pattern of past occurrences of injuries like the plaintiffs or demonstrating "that the risk of…cognizable harm was 'so great and so obvious that the risk and the failure…to respond will alone' support finding" deliberate indifference. *Id.* (citing *Beers-Capitol v. Whetzel,* 256 F.3d 120, 136-37 (3d Cir. 2001)).

Further, the Complaint contains no allegations demonstrating Plaintiff is entitled to compensatory damages.  The Complaint is void of a pattern of past occurrences of injuries like those alleged by Plaintiff. Rather, Plaintiff relies on lawsuits and settlements by the City regarding use of force claims, none of which resulted in a finding of a constitutional violation, and which are factually dissimilar to the instant action. Similarly, the Complaint contains insufficient allegation to demonstrate it was so obvious that a constitutional violation would

occur where Officer Arnold responded to a 911 emergency call for police assistance for an aggressive individual or where he was forced to make the split second decision to defend himself from an unprovoked and deadly attack.

Therefore, Plaintiff's Complaint fails to present factually plausible claim for a violation of the Americans with Disabilities Act (Count IX) against the City and must be dismissed.

### F.      Plaintiff's *Monell* Claims Against the City Fail.

The Supreme Court established that municipalities may be liable for constitution violation under 42 U.S.C. § 1983 where "execution of a government's policy of custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy, inflicts injury." *Monell v. N.Y.C. Dep't. of Soc. Servs.,* 436 U.S. 658 (1978). "That is, a municipality is subject to § 1983 liability to the extent it maintained an unconstitutional custom or policy that caused the constitutional violations alleged by the claimant but is not liable for injuries on the sole basis that they were inflicted by its employees." *Thomas v. Harrisburg City Police Dep't,* 2021 U.S. Dist. LEXIS 32938 *22-*23 (M.D. Pa. Feb. 23, 2021) (Kane, J.) (citing *Monell*, 436 U.S. at 694).

Failure to properly train employees can create a custom or policy for purposes of § 1983 liability if such failure is tantamount to "deliberate indifference to the constitutional rights of person with whom the police come in contact." *Canton,* 489 U.S. at 388 *City of Canton v. Harris,* 489 U.S. 378, 388 (1989).  Thus, "not all failures or lapses in training will support liability under § 1983." *Woloszyn v. County of Lawrence*, 2005 U.S. App. LEXIS 1417, *1 at *27-*28 (3d Cir. Jan. 28, 2005).

To establish deliberate indifference, a plaintiff must provide proof of "a pattern of underlying constitutional violations." *Carswell v. Borough of Homestead*, 381 F.3d 235, 243 (3d

Cir. 2004). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson,* 131 S. Ct. 1350, 1360 (2011)(quoting *Brown*, 520 U.S. at 409). More specifically, a plaintiff must set forth "a ***pattern*** of prior incidents or knowledge of ***similar*** violations of constitutional rights and ***failed to take adequate measures*** to ensure the particular right in question.'" *Cacciatore v. City of Phila*., 2005 U.S. Dist. LEXIS 19064, *1, *6 (E.D. Pa. Sept. 1, 2005) (quoting *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001)) (emphasis added).

Further, under a "single incident" theory, the complaint must contain allegations that policymakers 'kn[e]w to a moral certainty" that the alleged constitutional deprivation would occur and the need for further training "must have been plainly obvious." *Canton*, 489 U.S. at 390, n. 10. This theory of liability is possible only "in a narrow range of circumstances" and are "judged against a particularly exacting standard of pleading and proof." *Thompson,* 131 S. Ct. at 1361 (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 409 (1997)); *Santiago v. City of Harrisburg,* 2020 U.S. Dist. LEXIS 50359, *28 (M.D. Pa. 2020) (Carlson, M.J.). The "unconstitutional consequences of failing to train" must be "patently obvious" before a municipality can be liable under §1983 without proof of a pre-existing pattern of violations. *Id.* Even if shown, a complaint may still be insufficient where it lacks facts demonstrating the failure to train proximately caused the constitutional injury by identifying a specific failure in a training program that is closely related to the ultimate injury. *Canton,* 489 U.S. at 491.

Moreover, liability against a municipality "cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'" *Id.* at 390-91. "Rather, the causation

inquiry focuses on whether 'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect.'" *Id.*

### 1. <u>No Violation – No *Monell* (Counts II, IV, V, and XI).</u>

First, in order to establish a constitutional claim against a municipality, Plaintiff must first establish that one of its employees is primarily liable under § 1983. *Monell*, 463 U.S. at 694; *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989). A municipality cannot be liable under § 1983 under a theory of *respondeat superior*. *Monell,* 463 U.S. at 694.

Plaintiff has failed to establish a threshold underlying constitutional violation against Officer Arnold. Without a substantive violation, Plaintiff fails to present factually plausible *Monell* claims against the City and Counts II, IV, V, and XI must be dismissed.

### 2. <u>*Monell* claim—alleged use of force (Count II).</u>

The gist of Plaintiff's *Monell* claim asserted against the City in Count II is that it allegedly lacks a disciplinary mechanism for tracking, disciplining, or investigating its officers where misconduct is alleged. Specifically, Plaintiff alleges this deficit encourages officers to engage in the in violations of the Constitution. However, the allegations in the Complaint are no more than conclusory allegations that point to no specific policy or practice held by the City regarding discipline and are directly contradicted by the disciplinary process described in the City Defendants' Answer.  The City maintains a thorough system for tracking and evaluating the alleged misconduct of its officers. The system implements additional training, discipline and referrals to the City when needed to correct improper behavior and is available for supervisors to take corrective action while in the field.

Additionally, the Complaint does not allege in deficiency in the City's use of force training or providing medical care. The Bureau provides bi-annual use of force training that

reviews the use of force continuum, including the application of less than lethal and lethal force

in specific scenario. The City likewise trains officers in providing medical care, de-escalation

and interactions with individuals suffering from mental health concerns. Officers also receive

training regarding these topics in the academy and MPOETC.  Officer Arnold has attended, and

passed, trainings in all of these areas

Further, Plaintiff cannot establish a pattern of *similar violations* as those alleged against

Officer Arnold. The accusations of excessive force identified by Plaintiff are entirely unrelated

and factually dissimilar to the present incident. Plaintiff refers to litigation alleging *any*

constitutional violation, not just those involving the use of deadly force.

Taken in context, there has been no litigation against the Bureau or the City involving the

use of deadly force by its officers. On the contrary, the City, which has approximately 60,0000

residents[3] and *averages 50,000 calls for service per year*[4], has provided Plaintiff with evidence

that, in the *ten (10) years* prior to Mr. Munoz's death, there were only *four (4) fatal shootings*

involving Lancaster City Police Officers:

1. In June 2013, in a factually-similar situation, Officers were forced to use deadly force when the suspect charged at the Officers with a knife.

2. In May 2015, a Lancaster City Police Officer first attempted to use less than lethal force – a taser – but the subject shot the Officer, and another Lancaster City Officer fatally shot the subject.

---

[3] https://www.census.gov/quickfacts/lancastercitypennsylvania;
https://www.cityoflancasterpa.com/departments/department-of-public-safety/bureau-of-police/.

[4] *See* Lancaster City Police 2019 Year in Review (available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/viewer.html?pdfurl=https%3A%2F%2Fwww.cityoflancasterpa.com%2Fwp-content%2Fuploads%2F2020%2F06%2FLancaster-BOP-2019YearInReview.pdf&clen=857837&chunk=true and attached hereto as Exhibit C); Lancaster City Police 2020 Use of Force Report (available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/viewer.html?pdfurl=https%3A%2F%2Flancasterpolice.com%2Fasets%2FUploads%2FBOP-2020-UOF-Report-Web3.pdf&clen=548203&chunk=true and attached hereto as Exhibit D); Lancaster City Police Use of Force Statistics 4th quarter 2021 (available at https://lancasterpolice.com/news/general/use-of-force-statistics-4th-quarter-2021/ and attached hereto as Exhibit E).

3.  In January 2017, Officers were forced to return fire when the subject
    shot at two Lancaster Police Officers.

4.  In September 2018, Officers fatally shot a subject who was holding a
    woman at gunpoint.

*See also* https://lancasteronline.com/news/local/defense-in-ricardo-mu-oz-wrongful-death-suit-denies-its-seeking-blanket-confidentiality/article_f2e1c030-837d-11ec-8d2b-67daddd92f12.html.

These statistics can hardly be said to establish a pattern of the use of excessive deadly force by City police officers.

Finally, the Complaint puts forth no facts which would make it "patently obvious" that as a result of allegedly failing to track, discipline or investigate its officers, policymakers "knew to a moral certainty" that that its officers would use deadly force in self-defense from an unprovoked attack. Instead, the allegations in the Complaint appear to rely on the theory that "better" or "additional" training, which *Thomas* makes clear is insufficient to establish liability.

Therefore, Plaintiff's Complaint fails to present factually plausible claim for *Monell* liability against the City of Lancaster.

### 3.      *Monell* Claim—Alleged Negligent Hiring (Count V) Fails.

"Under limited circumstances, courts have recognized claims for *Monell* liability based on a municipality's hiring decisions—in particular 'where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be deprivation of a third party's federally protected right[s].'" *Robinson v. Fair Acres Geriatric Ctr.,* 722 F. App's 194, 199 (3d Cir. 2018)(quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 411 (1997)). A plaintiff must allege a particular employee's "background was so obviously inadequate as to put [the employer] on notice of the likelihood that [a violation or] injury would result." *Id.*

25

Plaintiff fails to allege it was plainly obvious that any of the hiring decisions by the City, including that of Officer Arnold, would result in the constitutional violation. Likewise, Plaintiff fails to identify any inadequacies by the City in scrutinizing the background of its officers, including Officer Arnold. Further, Officer Arnold has no disciplinary history; instead, he has two commendations and a letter of gratitude for assisting in taking a dangerous individual into custody. Therefore, Plaintiff's Complaint fails to present factually plausible claims for *Monell* liability against the City for negligent hiring. As such, Count V must be dismissed with prejudice.

**G.    Plaintiff's Claims Against Chief Berkihiser Must be Dismissed.**

An official capacity suit is merely another way of pleading an action against an entity of which an officer is an agent. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). It is *not* a suit against the official personally, for the real party in interest is the entity. *Id.* at 166 (emphasis in the original). Additionally, a defendant can only be held liable if he was personally, affirmatively involved in the alleged unconstitutional conduct. *C.N. v. Ridgewood Bd. of Ed.,* 430 F.3d 159, 173 (3d Cir. 2005).

Plaintiff sues former Chief Berkihiser in his official capacity only. As such, the claims asserted against him are duplicative of those asserted against the City and must be dismissed. Further, there is no allegation that Chief Berkihiser was present for or involved in the underlying incident (as he was not), and as such, Plaintiff cannot establish individual liability against Chief Berkihiser.  Therefore, Plaintiff's Complaint fails to present factually plausible claims against former Chief Berkihiser, and he must be dismissed as a defendant.

**H.    Plaintiff's Complaint Fails to State a Claim for Violation of 42 Pa. C.S.A. § 8309 (Count VIII).**

Section 8309 sets forth a cause of action for personal injuries incurred as a result of ethnic intimidation. 42 Pa. C.S.A. § 8309.  A person commits the offense of ethnic intimidation

if, "with malicious intention toward the race…of another individual," he commits any number of underlying criminal offenses. 18 Pa. C.S.A. § 2710(a). Malicious intention means "the intention to commit any act…motivated by hatred toward the race…of another individual or group of individuals." 18 Pa. C.S.A. § 2710(c). The statute requires a showing that "in the course of committing the predicate offense, the actor manifested a malicious intent toward the intended victim and had as motivation the hatred of the victim's race." *Brown-Dickerson v. City of Phila.,* 2016 U.S. Dis. LEXIS 54624 *12-*15 (E.D. Pa. Apr. 25, 2016) (Dalzell, J.) (citing *Commonwealth v. Sinnott,* 30 A.3d 1105, 1109 (Pa. 2011).

The pleadings make clear that City Defendants did not engage in acts of ethnic intimidation, were in any way motivated by a racial hatred of Hispanic individuals or acted maliciously and with racial prejudice to satisfy § 8309's animus requirements. Therefore, Plaintiff's Complaint fails to present a factually plausible claim for a violation of § 8309 and Count VIII must be dismissed.

I.   **Plaintiff's Intentional State Law Claims Brought on Behalf of Herself and Munoz Fail.**

Plaintiff's state law claims are barred pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"). The Tort Claims Act "expressly bars recovery against a municipality for intentional torts, including any acts which constitute 'a crime, actual fraud, actual malice, or willful misconduct" *Holmes v. City of Phila.,* 2005 U.S. Dist. LEXIS 16116, *9 (E.D. Pa. Aug. 4, 2005 )(quoting 42 Pa. C.S. § 8542(a)(2); *see also Lakits v. York*, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003) (the Tort Claims Act does not waive immunity for intentional torts). Therefore, Plaintiff's claims against the City for intentional torts must be dismissed.

This same immunity is afforded to police officers unless the officer ***intended*** to commit the intentional tort. *Brummell v. City of Harrisburg,* 2010 U.S. Dist. LEXIS *10-*11 (M.D. Pa.

Sept. 30, 2010) (citing *Pettit v. Namie,* 931 A.2d 790, 801 (Cmwlth. Ct. 2007). Here, it is clear

that Officer Arnold did not intend to commit a battery. Rather, his use of force was necessary to

protect himself from the deadly attack by Munoz. *See* 18 Pa. C.S. §505 (2)(b); *Garner*, *supra.*

Similarly, as the BWC video demonstrates, Officer Arnold did not ***intend*** to inflict severe

emotional harm on Plaintiff. Moreover, where, like here, the situation required Officer Arnold to

make a split-second decision concerning a threat of serious bodily harm or death in response to

the unprovoked and deadly attack of Munoz, his actions can hardly be described intolerable in a

civilized society. *See Kazatsky v. King David Memorial Park,* 515 Pa. 183, 190-1 (1987).

Therefore, the City Defendants are immune from suit, or should, at minimum be granted

"official immunity" under the Tort Claims Act. As such, Plaintiff fails to present any factually

plausible state law claims and Counts V**,** VI, VII, X, and XII must be dismissed.

**J.**     **Defendants Are Immune from Plaintiff's State Law Negligence Claims.**

The Tort Claims Act grants immunity to municipalities and local agencies, such as the

City, and its employees from claims based in negligence for monetary damages except with

respect to nine (9) specific types of tortious conduct, which are to be narrowly construed.  42 Pa.

C.S.A. § 8541 *et seq.*; *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 600 (3d Cir. 1998); *see*

*Lindstrom v. City of Corry*, 763 A.2d 394 (Pa. 2000). Numerous cases have found that negligent

hiring, supervision, or retention claims are barred by, and do not fall within any of the

enumerated exceptions to, governmental immunity in the Tort Claims Act. *See Joyner v. Sch.*

*Dist. Of Phila.,* 313 F. Supp. 2d 495, 504 (E.D. Pa. 2004) (dismissing plaintiff's claim because

"[n]egligent hiring, training and retention of an unfit supervisor is not one of the negligent acts

for which immunity is waived" under the Tort Claims Act); *Gjeka v. Delaware Cnty. Cmty.*

*Coll.,* 2013 WL 2257727, at *12 (E.D. Pa. May 23, 2013)

The same immunity protects police officers. "State law claims raised against a public official in his official capacities are necessarily barred by the Political Subdivision Tort Claims Act, . . . because such an official necessarily acts within the scope of his office or duties, entitling him to official immunities." *Devatt v. Lohenitz*, 338 F. Supp. 2d 588, 599 (E.D. Pa. 2004) (Gardner, J.) (citing 42 Pa. C.S.A. § 8545).

Here, Plaintiff's state law claims do not fall within any of the nine (9) enumerated exceptions. Moreover, Plaintiff does not allege that the individual acts of Chief Berkihiser or Officer Arnold that amount to a crime, actual fraud, actual malice, or willful misconduct. *Gonzalez v. City of Bethlehem,* 1993 U.S. Dist. LEXIS 13050 *9-*14 (E.D. Pa. July 12, 1993)(citing 42 Pa. C.S.A. § 8542). To the contrary, the Lancaster County District Attorney found that the conduct of Officer Arnold was justified, lawful, and necessary. Therefore, Plaintiff's state law claims grounded in negligence must be dismissed.

**K.     Plaintiff's Claim for Punitive Damages Must be Dismissed.**

Even if this Court does not dismiss Plaintiff's claims in total, the BWC video of the incident clearly dispels any question regarding Officer Arnold's motive or intent, and Plaintiff's demand for punitive damages should be dismissed.

"A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "While the *Smith* Court determined that it was unnecessary to show actual malice to qualify for a punitive award…, its intent standard, at a minimum, required recklessness in its subjective form. The Court referred to a 'subjective consciousness' of a risk of injury or

illegality and a 'criminal indifference to civil obligations.'" *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999) (discussing *Smith* in the context of a Title VII case).

Plaintiff's Complaint contains no allegations that Officer Arnold or former Chief Berkihiser were motivated by an evil motive, were recklessly indifferent to Munoz's constitutional rights, or had any prior personal animosity towards Munoz.  Further, punitive damages cannot, as a matter of law, be recovered against a public entity like as the City. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). Thus, at minimum, Plaintiff's claim for punitive damages should be dismissed.

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, the City Defendants respectfully request that This Honorable Court grant their Motion for Judgment on the Pleadings and dismiss all claims (Counts I, II, IV, IV through XII of Plaintiff's Complaint) against them *with prejudice*.

Respectfully submitted,

**MacMain, Connell & Leinhauser, LLC**

Dated: <u>February 10, 2022</u>          By:     <u>*/s/ David J. MacMain*          </u>
David J. MacMain
Janelle E. Fulton
Attorney I.D. Nos. 59320/80027
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Defendants, The City of Lancaster,*
*Chief Berkihiser, and Officer Arnold*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MIGUELINA PENA, Individually and as          :
Independent Administrator of the Estate of    :
RICARDO MUNOZ, Deceased,                       :
                           Plaintiffs,    :
                                     :
                v.                          :   CIVIL ACTION
                                     :   DOCKET NO. 21-00590
CITY OF LANCASTER, JARRAD                      :
BERKIHISER, KARSON ARNOLD and,                 :
COUNTY OF LANCASTER,                           :
PENNSYLVANIA,                                   :
                                     :
                    Defendants.     :

## <u>CERTIFICATE OF NON-CONCURRENCE</u>

I, David J. MacMain, counsel for Defendants, the City of Lancaster, Chief Jarrad

Berkihiser, and Officer Karson (hereinafter "City Defendants") hereby certify that I contacted

counsel for Plaintiff by email, and Plaintiff does not concur in the City Defendants' Motion for

Judgment on the Pleadings.

                              Respectfully submitted,

                              **MacMain, Connell & Leinhauser, LLC**

Dated: <u>February 10, 2022</u>     By:    <u>*/s/ David J. MacMain*        </u>
                                      David J. MacMain
                                      Janelle E. Fulton
                                      Attorney I.D. Nos. 59320/80027
                                      433 W. Market Street, Suite 200
                                      West Chester, PA 19382
                                      *Attorneys for Defendants*
                                      *The City of Lancaster, Chief Berkihiser, and*
                                      *Officer Arnold*

## CERTIFICATE OF SERVICE

I, David J. MacMain, hereby certify that on this 10th day of February 2022, a copy of the

foregoing was served upon the following via electronic notification:

Michael R. Perna, Esquire
Perna & Albracht, LLC
610 Millers Hill, PO Box 96
Kennett Square, PA 19348
*Attorney for Plaintiff*

Daisy Ayllon, Esquire
Steven Levin, Esquire
Julie Ann Murphy, Esquire
Levin & Perconti
325 North LaSalle Street, Suite 300
Chicago, IL 60654
*Attorneys for Plaintiff*

**MacMain, Connell & Leinhauser, LLC**

Dated: <u>February 10, 2022</u>          By:      <u>*/s/ David J. MacMain*          </u>
David J. MacMain
Janelle E. Fulton
Attorney I.D. Nos. 59320/80027
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Defendants, The City of Lancaster,*
*Chief Berkihiser, and Officer Arnold*

# EXHIBIT A:

BWC Video Filed with Clerk's Office

# EXHIBIT B

911 Audio Filed with Clerk's Office

# EXHIBIT C

# LANCASTER CITY POLICE – 2019 YEAR IN REVIEW

## 235
**Positive Comments & Officer Commendations**
including Lifesaving, Bravery, and Merit



## 8
**Complaints leading to discipline/further training**



## 84,000+
**Calls for Service, Proactive Policing Incidents, Court Hearings Attended**



## 150
**Body Cameras Rolled-Out**



## 350+
**Youth involved in the Police Athletic League**

## KEY ACCOMPLISHMENTS



- Revised the **Use of Force policy** and conducted further de-escalation and other training for our officers.
- Revised the **Civilian Complaint Form** and made it available in Spanish.
- Translated **LancasterPolice.com** into Spanish.
- Partnered with the NAACP in **recruiting and test preparation efforts.**
- Reorganized the Bureau of Police to include a 3 member **Community Engagement department.**
- Hired the first **Police Social Worker** to connect those we serve with social service agencies who are better equipped to assist.
- Combined various sources of data to make **data-informed decisions** with the help of BuildingBlocks.

### CONTACT US

**IN CASE OF EMERGENCY — CALL 911**

*Non-Emergency Dispatch — (717) 664-1180*
*Administrative Office — (717) 735-3300*
*Submit a tip online at LancasterPolice.com*


CITY OF LANCASTER

**LANCASTERPOLICE.COM • CITYOFLANCASTERPA.COM**

# LANCASTER CITY POLICE IN THE COMMUNITY

Community engagement, youth engagement, and recruitment continued to be priorities for the Bureau of Police in 2019. With the help of community organizations, neighborhood groups, and schools our officers were involved in over 60 community events in every corner of the City of Lancaster.



## 23
*Children & Youth Engagement Events*



## 19
*Neighborhood Engagement Events*

## 18
*Community Education Events*



## 8
*Recruitment Events*



## A NOTE FROM CHIEF BERKIHISER

The mission of the Lancaster City Bureau of Police is to provide outstanding service with professionalism and integrity. The Bureau's motto is Duty, Honor, Courage, and Commitment. Our employees proudly display these commitments in the work that they do for our community every day.

We are proud to continue to build partnerships with community organizations and neighborhood groups. We use community-based policing and intelligence-led policing to serve the residents and visitors of the city, but our overall success in crime prevention and crime solving abilities is founded in the confidence, trust and support we receive from the community. We rely on everyone in our community to help us improve the quality of life for everyone in Lancaster.

**JARRAD BERKIHISER**
*Chief of Police*
berkihij@lancasterpolice.com

## CONNECT WITH THE LANCASTER CITY BUREAU OF POLICE
*Facebook.com/LancCityPD • Twitter.com/LancasterPolice • LancasterPolice.com*

**LANCASTER CITY BUREAU OF POLICE**
39 W. Chestnut Street
Lancaster, PA 17603


CITY OF
LANCASTER

© City of Lancaster, PA. All Rights Reserved. BOP-JK-02-2020-005

EXHIBIT D

# 2020 USE OF FORCE REPORT

**BUREAU OF POLICE**
LANCASTERPOLICE.COM

## OVERVIEW

In 2020, the Lancaster City Police Bureau responded to approximately 47,000 calls for service received at the County dispatch center. This resulted in approximately 35,500 reported incidents and 2,144 arrests. Of these incidents, force was used 66 times.

*This number reflects each singular incident of force being applied to an individual. If multiple officers submit UOF reports from one arrest of one person, it is counted as one incident of force. If during one incident (for example a large fight) force is applied to two or more individuals, then one incident of force is applied to each individual.*

## STATISTICS

Arrests Requiring Use of Force: **1.9%**
*Of 2,144 arrests, 42 required force to effect the arrest.*

Use of Force Reports related to May 30-31, 2020 Protests: **7**
*6 (six) were Oleoresin Capsicum (OC) deployments. These 7 (seven) arrests account for 10.6% of all Use of Force reports in 2020.*

Use of Force by Gender
*Male (57), Female (9)*

Use of Force by Race
*White (20), Hispanic (29), Black (12), Asian (0), Unkown (5)*

Police Taser-Probe Deployment: **19**
*Accounts for 0.8% of all arrests in 2020.*

Deadly Force Used by Police: **3**
*One incident resulted in discharging of a firearm, a Hispanic male, armed with a knife. The other two incidents involved officers pointing their firearm at a subject, each time lawfully, but not firing their weapon.*

### REPORTABLE INCIDENTS OF FORCE BY TYPE (2020)



0%   20%   40%   60%   80%   100%
■ Soft Empty Handed (37)  ■ Hard Empty Handed (24)  ■ Intermediate (2)  ■ Deadly UOF (3)

### LANCASTER CITY POPULATION BY RACE (2018)



0%   20%   40%   60%   80%   100%
■ White (40.1%)  ■ Hispanic (38.3%)  ■ Black (17.2%)  ■ Asian (4.4%)

### REPORTABLE INCIDENTS OF FORCE (2018–2020)



2018   2019   2020

### NUMBER OF INCIDENTS OF FORCE BY RACE (2018–2020)



White   Hispanic   Black   Unknown
■ 2018  ■ 2019  ■ 2020

*The statistics on this sheet are taken from the Lancaster City Bureau of Police IA Pro™ database. then manually verified by staff in the Professional Standards division.*

## CONNECT WITH THE LANCASTER CITY BUREAU OF POLICE

*Facebook.com/LancCityPD • Twitter.com/LancasterPolice • LancasterPolice.com*

**LANCASTER CITY BUREAU OF POLICE**
39 W. Chestnut Street
Lancaster, PA 17603



**CITY OF LANCASTER**

© City of Lancaster, PA. All Rights Reserved. BOP-JK-03-2021-008

# 2020 USE OF FORCE REPORT

CONTINUED

## USE OF FORCE CONTINUUM

A use of force (UOF) continuum is a standard that provides law enforcement officers and civilians with guidelines as to how much force may be used against a resisting subject in a given situation. The purpose of these models is to clarify, both for law enforcement officers and civilians, the complex subject of use of force. They are often central parts of law enforcement agencies' use of force policies.

### LANCASTER'S UOF CONTINUUM

1) Officer Presence
   *Identification of authority*

2) Verbal Direction
   *Commands of direction or arrest*

3) Soft Empty Hand Control
   *Techniques that have a minimal probability of injury*

4) Hard Empty Hand Control
   *Techniques that have a high probability of injury*

5) Intermediate Weapons
   *Impact weapon strike*

6) Deadly Force
   *Deadly force actions*

### DUTY TO INTERVENE

When in a position to do so, officers shall intervene when they know or have reason to know that another officer is about to use or is using unnecessary force. Officers shall promptly report any use of unnecessary force, and the efforts made to intervene, to a supervisor.



*Scan Here to read the full Lancaster City Bureau of Police Use of Force policy.*

### DE-ESCALATION

When safe and feasible to do so given the totality of the circumstances officers shall attempt to take action to prevent or decrease the need to use force during an incident and to increase the likelihood of voluntary compliance.

Such techniques include but are not limited to:

1) Persuasion, advice and provide a warning prior to using force.

2) Establishing a rapport and engaging in communication with the subject.

3) Evaluating whether the use of time, distance and positioning to create a buffer zone or create a reactionary gap will stabilize the situation.

4) When appropriate, request additional resources.

### WHAT IS DEADLY FORCE?

Deadly Force is any force that creates a substantial risk of causing death or serious bodily injury. In Lancaster, officers are only authorized to use deadly force to in the following situations:

- To protect themselves or others from what is reasonably believed to be an imminent threat of death or serious bodily injury.

- To prevent a crime where the suspect's actions place people in imminent jeopardy of death or serious bodily injury.

- To prevent the escape of a violent fleeing felon when there is probable cause to believe the escape will pose a significant threat of death or serious bodily injury to the officer or others if apprehension is delayed. In this circumstance, officers shall, to the extent practicable, avoid using deadly force that might subject innocent bystanders or hostages to possible death or injury.

Officers avoid the use of choke holds or strikes to the head with an instrument other than hands or fists, unless lethal force is reasonably believed to be necessary within the guidelines of the law and the Use of Force policy.

---

### CONNECT WITH THE LANCASTER CITY BUREAU OF POLICE

*Facebook.com/LancCityPD • Twitter.com/LancasterPolice • LancasterPolice.com*

**LANCASTER CITY BUREAU OF POLICE**
39 W. Chestnut Street
Lancaster, PA 17603



CITY OF
LANCASTER

© City of Lancaster, PA. All Rights Reserved. BOP-JK-03-2021-008

# EXHIBIT E

*En Español*

NEWS   ABOUT   COMMUNITY   CRIME PREVENTION   CAREERS   CONTACT    SEARCH   Search

**Today is Monday, January 31**
In case of Emergencies: 911
Non-Emergencies: (717) 664-1180
Administrative: (717) 735-3300



## Use of Force Statistics 4th quarter 2021

*19 January 2022 by Glenn Stoltzfus*

In the fourth quarter of 2021, the Lancaster City Bureau of Police responded to approximately 13,400 calls for service received at County dispatch center. This resulted in approximately 9,800 reported incidents and 252 arrests. Of these incidents, force was used 18 times involving 16 individuals. See the attached file for additional information.

**General**

**Press Release**

**BROWSE BY DATE**

- January 2022
- November 2021
- April 2021
- June 2016
- February 2016
- January 2016
- December 2015
- November 2015
- October 2015
- September 2015
- August 2015
- July 2015
- June 2015
- May 2015
- April 2015
- March 2015
- February 2015
- January 2015
- December 2014
- November 2014
- October 2014
- September 2014
- August 2014
- July 2014
- May 2014
- April 2014
- March 2014
- February 2014
- January 2014
- December 2013
- November 2013
- October 2013
- September 2013
- August 2013
- July 2013
- June 2013
- May 2013
- April 2013
- March 2013
- February 2013
- January 2013
- December 2012
- November 2012

»  October 2012
»  September 2012
»  August 2012
»  July 2012
»  May 2012
»  December 2011
»  May 2010
»  January 2010
»  June 2009
»  May 2009
»  March 2009

# USE OF FORCE REPORT

**OCTOBER 1–DECEMBER 31, 2021**

## OVERVIEW

In the fourth quarter of 2021, the Lancaster City Bureau of Police responded to approximately 13,400 calls for service received at County dispatch center. This resulted in approximately 9,800 reported incidents and 252 arrests. Of these incidents, force was used 18 times involving 16 individuals.

*This number reflects each singular incident of force being applied to one individual. If multiple officers submit UOF reports from one scene of one person, it is counted as one incident of force. If during one incident (for example a large fight) force is applied to two or more individuals, then one incident of force is applied to each individual.*

## STATISTICS

- Arrests Requiring Use of Force: **6.35%**
  *Of 252 arrests, 16 individuals required force to effect the arrest.*
- Use of Force by Gender
  *Male (15), Female (1)*
- Use of Force by Race
  *White (5), Hispanic (6), Black (5)*
- Police Taser-Probe Deployment: **5**
  *Accounts for <2% of all arrests in Q4 2021.*
- Deadly Force Used by Police: **2**
  *Incidents involved officer pointing their firearm at subject, lawfully, but not firing their weapon.*
- Oleoresin Capsicum (OC) was not utilized in Q4 2021.

### REPORTABLE INCIDENTS OF FORCE BY TYPE



0%  20%  40%  60%  80%  100%

- Soft Empty Handed (7)  ■ Hard Empty Handed (2)
- Electronic Control Weapon (ECW) (5)  ■ Intermediate (3)
- Deadly UOF (2)

### LANCASTER CITY POPULATION BY RACE (2018)

0%  20%  40%  60%  80%  100%

■ White (40.1%)  ■ Hispanic (38.3%)  ■ Black (17.2%)  ■ Asian (4.4%)

### REPORTABLE INCIDENTS OF FORCE BY GENDER



Male      Female

### REPORTABLE INCIDENTS OF FORCE BY RACE



White    Hispanic    Black

*The statistics on this sheet are taken from the Lancaster City Bureau of Police IA Pro™ database, then manually verified by staff in the Professional Standards division.*

## CONNECT WITH THE LANCASTER CITY BUREAU OF POLICE

*Facebook.com/LancCityPD • Twitter.com/LancasterPolice • LancasterPolice.com*

**LANCASTER CITY BUREAU OF POLICE**
39 W. Chestnut Street
Lancaster, PA 17603

CITY OF **LANCASTER**

© City of Lancaster, PA. All Rights Reserved. BOP-247

# USE OF FORCE REPORT

**OCTOBER 1–DECEMBER 31, 2021**
**CONTINUED**

## USE OF FORCE CONTINUUM

A use of force (UOF) continuum is a standard that provides law enforcement officers and civilians with guidelines as to how much force may be used against a resisting subject in a given situation. The purpose of these models is to clarify, both for law enforcement officers and civilians, the complex subject of use of force. They are often central parts of law enforcement agencies' use of force policies.

### LANCASTER'S UOF CONTINUUM

1) Officer Presence
   *Identification of authority*
2) Verbal Direction
   *Commands of direction or arrest*
3) Soft Empty Hand Control
   *Techniques that have a minimal probability of injury*
4) Hard Empty Hand Control
   *Techniques that have a high probability of injury*
5) Intermediate Weapons
   *Impact weapon strike*
6) Deadly Force
   *Deadly force actions*

### DUTY TO INTERVENE

When in a position to do so, officers shall intervene when they know or have reason to know that another officer is about to use or is using unnecessary force. Officers shall promptly report any use of unnecessary force, and the efforts made to intervene, to a supervisor.

### DE-ESCALATION

When safe and feasible to do so given the totality of the circumstances officers shall attempt to take action to prevent or decrease the need to use force during an incident and to increase the likelihood of voluntary compliance.

Such techniques include but are not limited to:

1) Persuasion, advice and provide a warning prior to using force.
2) Establishing a rapport and engaging in communication with the subject.
3) Evaluating whether the use of time, distance and positioning to create a buffer zone or create a reactionary gap will stabilize the situation.
4) When appropriate, request additional resources.

### WHAT IS DEADLY FORCE?

Deadly Force is any force that creates a substantial risk of causing death or serious bodily injury. In Lancaster, officers are only authorized to use deadly force in the following situations:

- To protect themselves or others from what is reasonably believed to be an imminent threat of death or serious bodily injury.
- To prevent a crime where the suspect's actions place people in imminent jeopardy of death or serious bodily injury.
- To prevent the escape of a violent fleeing felon when there is probable cause to believe the escape will pose a significant threat of death or serious bodily injury to the officer or others if apprehension is delayed. In this circumstance, officers shall, to the extent practicable, avoid using deadly force that might subject innocent bystanders or hostages to possible death or injury.


Scan Here to read the full



Officers avoid the use of choke holds or strikes to the head with an instrument other than hands or fists, unless lethal force is reasonably believed to be necessary within the guidelines of the law and the Use of Force policy.

CONNECT WITH THE LANCASTER CITY BUREAU OF POLICE
Facebook.com/LancCityPD • Twitter.com/LancasterPolice • LancasterPolice.com

LANCASTER CITY BUREAU OF POLICE
39 W. Chestnut Street
Lancaster, PA 17603

CITY OF LANCASTER

© City of Lancaster, PA. All Rights Reserved. BOP-247

**EN ESPAÑOL**

**NEWS**
General
Press Release

**ABOUT**
History
Mission
Divisions
Police Foundation
Statistics

**COMMUNITY**
Upcoming Events
Recent Incidents
Citizens Police Academy

**CRIME PREVENTION**
Private Security Camera
Registry
CPTED
Documents
Crime Prevention Links
Crime Prevention Tips

**CAREERS**
Officer
Civilian
VIP
Cadets

**CONTACT**
Sector Officers
Parking Tickets and
Permits
Commend an Officer
Recovered Property

**LEGAL NOTICES**
Privacy Policy

**FORMS**
Right to Know
Noise Variance
Citizen Crime Report
Vendor / Business Permits
Complaint Procedures
and Civilian Complaint
Form

**HOME**

Copyright © 2022 Lancaster City Bureau of Police

Website by Logicbrush Studios, Ltd.