## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MIGUELINA PENA, INDIVIDUALLY
AND AS INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF
RICARDO MUNOZ, DECEASED,

    *Plaintiff*,

    v.

CITY OF LANCASTER, *et al*.,

    *Defendants*.

CIVIL ACTION
NO. 5:21-cv-00590-JLS

---

## <u>MEMORANDUM OPINION</u>

**SCHMEHL, J.** */s/ JLS*                                          **AUGUST 4, 2025**

Plaintiff Miguelina Peña filed this civil-rights and tort action after an officer from the City of Lancaster Bureau of Police fatally shot her son, Ricardo Muñoz, on September 13, 2020. Her complaint asserted twelve federal and state claims against a variety of individual and municipal defendants. Following rulings on a motion to dismiss, *Pena v. City of Lancaster*, No. 21-cv-590-JLS, 2022 WL 44005, at *3 (E.D. Pa. Jan. 5, 2022), and a motion for judgment on the pleadings, *Pena v. City of Lancaster*, 690 F. Supp. 3d 494, 520 (E.D. Pa. 2023), only eight claims advanced through discovery. And with that period now complete, the remaining named defendants have moved for summary judgment. For the reasons set forth below, their motion for summary judgment is granted in part and denied in part.

### I

### A

This action commenced on February 8, 2021, when Miguelina Peña filed a complaint against the City of Lancaster, Jarrad Berkihiser (in his individual and official capacity as Chief of

Police for the City of Lancaster), Karson Arnold (in his individual and official capacity as a police officer for the City of Lancaster), Lancaster County, and "unknown police officers." The complaint alleged that on September 13, 2020, Ms. Peña's son, Ricardo Muñoz, experienced a mental-health crisis at her home in Lancaster, prompting one of Muñoz's sisters to call 911. Compl. ¶¶ 37-38, ECF No. 1. Officer Karson Arnold responded to the call and arrived at the residence shortly after 4:00 p.m. *Id*. ¶ 23. As Officer Arnold approached, Mr. Muñoz retrieved a knife from inside the home, rushed from the front porch toward the officer, and was then shot four times. *Id*. ¶¶ 24-27, 29, 44. Additional officers arrived moments later and then decided to cancel the ambulance originally dispatched, thereby delaying medical care. *Id*. ¶¶ 63-64. Mr. Muñoz received medical attention only at 6:20 p.m., more than two hours after the shooting, and was pronounced dead at 6:35 p.m. *Id*. ¶¶ 66-67.

From these alleged facts, Ms. Peña—acting as the personal representative of her son's estate—brought five counts under 42 U.S.C. § 1983, a claim under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, state-law claims for battery and wrongful death, and a Pennsylvania civil-rights claim under 42 Pa. Cons. Stat. § 8309. Simultaneously, proceeding in her individual capacity, Ms. Peña further pleaded a claim for intentional infliction of emotional distress, and an additional § 1983 and state-law battery claim—those latter two generally alleging that, in the chaos following the shooting, officers slammed Ms. Peña against a patrol car and unlawfully detained her at the police station until she secured counsel.

B

On April 9, 2021, in response to the complaint, Lancaster County alone moved to dismiss. *See* Mot. to Dismiss, ECF No. 18. While that motion was under advisement, the "City Defendants"—consisting of Officer Arnold, Chief Berkihiser, and the City of Lancaster—filed

2

their answer, ECF No. 19, and the Court held an initial Rule 16 conference. By Memorandum

Opinion and Order dated January 4, 2022, the Court granted the county's motion and terminated

it as a party, leaving only the City Defendants as the remaining named defendants. *See Pena v.*

*City of Lancaster*, No. 21-CV-590-JLS, 2022 WL 44005, at *3 (E.D. Pa. Jan. 5, 2022).

The City Defendants then moved for judgment on the pleadings pursuant to Rule 12(c) on

February 10, 2022. *See* Mot. for J. on the Pleadings, ECF No. 55. The Court resolved that motion

on September 7, 2023, granting it in part and denying it in part. *See generally Pena v. City of*

*Lancaster*, 690 F. Supp. 3d 494, 520 (E.D. Pa. 2023). The remaining eight counts, set forth in the

chart below, then continued through discovery.

| Count | Cause of Action | Defendant(s) |
|-------|-----------------|--------------|
| Count II | 42 U.S.C. § 1983 | City of Lancaster |
| Count IV | 42 U.S.C. § 1983 | City of Lancaster Officer Arnold Chief Berkihiser |
| Count V | 42 U.S.C. § 1983 | City of Lancaster Chief Berkihiser |
| Count VI | Battery | Officer Arnold |
| Count VII | Wrongful Death | City of Lancaster Officer Arnold Chief Berkihiser |
| Count IX | 42 U.S.C. §§ 12101-12213 | City of Lancaster |
| Count X | Intentional Infliction of Emotional Distress | City of Lancaster Officer Arnold |
| Count XI | 42 U.S.C. § 1983 | City of Lancaster |

Throughout the discovery period, the Court held a series of status conferences and issued various orders extending fact and expert discovery into 2024 and fixing October 15, 2024, as the dispositive-motion deadline.  *See*, *e.g.*, Case-Mgmt. Order, ECF No. 105.  Thereafter, the City Defendants timely filed the present Rule 56 motion for summary judgment against many of the claims remaining against them, *see* Mot. for Summ. J., ECF No. 112, together with a document titled "Partial Joint Statement of Undisputed Material Facts," ECF No. 111.  On January 13, 2025, Ms. Peña responded to the motion for summary judgment, filed a 352-paragraph counterstatement of facts, more than two hundred exhibits, and a motion to strike the City Defendants' "statement," claiming that was not truly "joint."  *See* ECF Nos. 120-27.  The City Defendants then opposed that motion to strike and filed their own motion to strike Ms. Peña's counterstatement.[1]  The summary-judgment and related briefing eventually completed on February 3, 2025.

## II

Against this procedural backdrop, the Court turns to the sufficiency of the record under Rule 56, which allows the Court to enter summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Before analyzing each surviving count, the Court observes that the moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[1]    Because the parties were unable to produce an uncontested joint statement of facts, the Court will treat each submission as the product of the filing party alone.  Accordingly, both motions to strike are denied.

Once that initial showing is made, the burden then shifts to the non-moving party to go beyond the pleadings and come forward with specific, material facts that present "a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations omitted). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and it is "material" only if it might affect the outcome under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In conducting this analysis, the Court must review the record as a whole and draw all reasonable inferences in favor of the non-movant. *Hugh v. Butler Cnty Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (internal citations omitted). Applying this standard, the Court now considers each challenged claim in turn.

III

A

Count II seeks to impose municipal liability on the City of Lancaster under 42 U.S.C. § 1983. Read in tandem with Ms. Peña's opposition to summary judgment, Count II advances two theories of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). First, Ms. Peña contends that an official policy or custom "contributed to the excessive force used against Mr. Muñoz." Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 8, ECF No. 124. Second, and in the alternative, Ms. Peña maintains that the City's failure to both supervise and train its officers to meet the needs of persons in mental-health crises amounted to deliberate indifference that itself supports liability under § 1983. *See id.* at 8-12.

1

The City Defendants' opening brief attacks both theories of liability on a single point. They argue that because Officer Arnold's underlying conduct did not violate the Fourth Amendment, no municipal liability may attach. *See Johnson v. City of Phila.*, 837 F.3d 343, 354 n.58 (3d Cir.

2016) ("[A] municipality cannot be held liable on a *Monell* claim absent an underlying constitutional violation." (citing *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003))).  More specifically, they maintain that, on the present record, and especially given Officer Arnold's body-camera footage, Officer Arnold's use of deadly force fits squarely within reasonableness calculus expressed in *City of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) and mirrors the circumstances in *Johnson v. City of Philadelphia*, where the Third Circuit held that a violent, unforeseen assault "severed any causal connection between [the officer's] initial actions and his subsequent use of deadly force."  837 F.3d 343, 352 (3d Cir. 2016).  Ms. Peña offers only a limited rebuttal in response: that the "totality of the circumstances" presents a genuine dispute of material fact as to the reasonableness of the force employed.  Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 5 n.1, ECF No. 124.  Ms. Peña does not directly address the City Defendants' proximate-cause argument.

The standard governing excessive-force claims under the Fourth Amendment, as incorporated, is well settled.  A plaintiff must demonstrate that a "seizure" occurred and that it was objectively unreasonable.  *See Barnes v. Felix*, 145 S. Ct. 1353, 1357 (2025).  The "inquiry into the reasonableness of police force requires analyzing the 'totality of the circumstances.'"  *Id.* (citing *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017)).  Pertinent factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham v. Connor*, 490 U.S. 386, 396 (1989), and also "the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers

must contend at one time." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (internal quotation marks and quoted source omitted). Here, no one disputes that Officer Arnold "seized" Mr. Muñoz when he fatally shot him. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."). The twin questions thus presented then are whether the officer's force was reasonable and whether any unconstitutional conduct proximately caused Mr. Muñoz's death. *See Johnson v. City of Phila.*, 837 F.3d 343, 351-54 (3d Cir. 2016).

On "reasonableness," Ms. Peña's claim fails. Ms. Peña concedes that Officer Arnold "did not know anything about Mr. Munoz's prior encounters with LCBP." Plaintiff's Statement of Facts ("PSOF") ¶ 58, ECF No. 120. She also concedes that while Officer Arnold was initially dispatched in response to a domestic disturbance call with a mention of mental-health concerns, the situation rapidly escalated into one of extreme danger. *See id.* ¶¶ 56-57, 72. Further, Ms. Peña does not contest the fact that Muñoz, armed with a raised knife, rapidly charged at Officer Arnold—who was simply standing on the sidewalk—from the residence and closed to within five to seven feet. *See* Officer Arnold's Body-Worn Camera Footage, ECF 121-2. There is, moreover, no reasonable dispute that as Officer Arnold attempted to retreat, Muñoz ran closer, and Arnold responded with four shots clearly in defense of his life. These facts weigh in favor of a finding of reasonableness.

Ms. Peña's implicit argument that Officer Arnold's use of deadly force was unreasonable insofar as Arnold approached the residence alone, without a plan, without backup, and without any effort to de-escalate is, simply put, unpersuasive. Whatever tactical decisions preceded the encounter, they do not weigh so heavily as to render the use of deadly force unreasonable in the

face of an immediate threat of serious harm.  So, viewing all the circumstances in the light most favorable to the plaintiff, the Court concludes that Officer Arnold's use of force was reasonable. The death of Mr. Munoz, while unquestionably tragic, was not, under the circumstances presented, a product of excessive force.  Accordingly, as there is no constitutional violation in the first instance, Ms. Peña's derivative claims necessarily fail.  *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

2

But even if the Court were to deem Officer Arnold's conduct unreasonable, Ms. Peña has also failed to establish the other independent elements of derivative liability.  Resisting this conclusion, Ms. Peña asserts that triable *Monell* issues exist under both a "policy or custom" theory and a "failure to train or supervise" theory.  Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 6-12, ECF No. 124; *see generally Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) ("Plaintiffs that proceed under a municipal policy or custom theory must make showings that are not required of those who proceed under a failure or inadequacy theory, and vice versa.").  But the Court disagrees.

With respect to policy-or-custom theory, Ms. Peña catalogues several asserted "*deficient* policies, practices, and disciplinary failures" by the Lancaster City Bureau of Police ("LCBP"). Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 8, ECF No. 124 (emphasis added).  The LCBP, the Court is told, had no policy obligating officers to acquaint themselves with the mental-health histories of subjects encountered on crisis calls, *id.* at 6 (citing PSOF ¶ 191); no requirement that patrol officers develop advance strategies for known individuals struggling with mental illness, *id.* (citing PSOF ¶ 192); no proper method of investigating and adjudicating officer misconduct, *id.* at 6-7 (citing PSOF ¶¶ 134, 136, 203, 221, 231-39, 249, 250, 259, 317-21, 335);

and a use-of-force policy that gave little attention to less-lethal alternatives, de-escalation, or other protocols tailored to mental-health emergencies, *id*. at 6 (citing PSOF ¶ 202).

Such evidence, even when construed in the light most favorable to Ms. Peña, does not alone sustain a claim for *Monell* liability under a policy-or-custom theory.  For a "policy," under *Monell*, is an "official proclamation, policy, or edict" issued by a final policymaker.  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  And "custom" is a "course of conduct so well-settled and permanent as to virtually constitute law."  *Id.*  (citations omitted).  Either way, to be actionable without proving deliberate indifference, the policy or custom must be facially unconstitutional.  *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ("If, as here, the policy or custom does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference.'" (citing *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 407 (1997))).

Here, the actions that Ms. Peña deems as "deficiencies" and "inadequacies" are otherwise facially lawful.  *See Hightower v. City of Phila.*, 130 F.4th 352, 356 (3d Cir. 2025) ("Lack of a policy is not a policy."); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (noting that "a plaintiff seeking to establish municipal liability on the theory that a *facially lawful municipal action* has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences" (citations omitted) (emphasis added)).  Therefore, to prevail on her theory, Ms. Peña must put forward some additional evidence and argument demonstrating that the alleged shortcomings constitute deliberate indifference.  However, she can not.  Instead, Ms. Peña simply labels the LCBP's practices "deficient."  *See* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ.

J. at 6-8, ECF No. 124.  That, without more, cannot sustain her theory.  Her policy-or-custom

theory therefore fails.

Still, Ms. Peña advances an alternative theory related to the LCBP's failure "to properly

supervise and train the officers responding to the call involving Mr. Muñoz."  Under the Third

Circuit's "failure-or-inadequacy" framework, *see Forrest v. Parry*, 930 F.3d 93, 105-06 (3d Cir.

2019), a municipality's omission is potentially actionable when it is, in fact, supported by evidence

of "deliberate indifference."  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  The Third

Circuit articulates the elements of deliberate indifference as: (1) the government actor knew that

employees would confront a particular situation; (2) the situation involved a matter that employees

had a history of mishandling; and (3) the wrong choice by an employee in that situation will

frequently cause a deprivation of an underlying constitutional right.  *See Forrest*, 930 F.3d at 106

(citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)); *see also* Model Jury Instructions

for Civil Rights Claims Under Section 1983 § 4.6.7 (3d Cir. 2025).

Importantly, to satisfy the second element of deliberate indifference, the Supreme Court

has emphasized that, ordinarily, a plaintiff must show "a pattern of similar constitutional

violations."  *Connick v. Thompson*, 563 U.S. 51, 70 (2011) (citing *Bd. of Cnty. Comm'rs. v. Brown*,

520 U.S. 397, 409 (1997)).  Here, Ms. Peña attempts to prove a pattern by offering a litany of prior

civil actions involving the LCBP that spans roughly two decades.  Pl.'s Mem. of L. in Opp'n to

Defs.' Mot. for Summ. J. at 11, ECF No. 124 (citing PSOF ¶¶ 203-30).  There are more than twenty

suits, each alleging excessive force or denial of medical care.  The suits describe disparate fact

patterns: a taser used on an individual seated on a sidewalk, a suspect thrown to the pavement

during a traffic stop, pepper spray employed on someone apparently trespassing in a parking lot,

and so on.  *Id.*  After reviewing them though, and as Justice Thomas said in *Connick v. Thompson*,

the Court concludes that "[t]hose incidents are not similar to the violation at issue here." 563 U.S. at 63.

Again, here, Ms. Peña claims that the City of Lancaster's failure was in its training and supervision of its officers handling situations with persons experiencing mental-health crises, and that this failure would obviously result in a violation of the Fourth Amendment. *See* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 10, ECF No. 124. Under *Connick*, Ms. Peña must therefore present some evidence that LCBP had a history of mishandling mental-health crises through the use of excessive force. *See Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 175 (3d Cir. 2017). Yet Ms. Peña offers no evidence of any such prior incident. She presents no evidence suggesting that Officer Arnold—or, for that matter, any officer of the LCBP—has ever previously mishandled a mental-health crisis with or without excessive force. *See* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 10, ECF No. 124. So, viewing LCBP's litigation history, combined with the remainder of the record, in the light most favorable to Ms. Peña, the Court concludes that the record fails to demonstrate a "pattern of similar constitutional violations" under *Connick* and her theory, as such, cannot proceed. *Connick*, 563 U.S. at 70 (citations omitted).

Perhaps recognizing this flaw, Ms. Peña attempts to salvage Count II by arguing that the "single-incident" theory of liability hypothesized in *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989), exists. In *Canton*, the Supreme Court suggested that, "in a narrow range of circumstances," a municipality's training deficiency may be so obvious that no prior pattern of misconduct is required. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). The Court hypothesized that such a liability may exist where a city arms officers and sends them on patrol without any instruction on the constitutional limits of deadly force. *See Connick v. Thompson*, 563 U.S. 51, 63 (2011) (citing *Brown*, 520 U.S. 490). Because arrests of fleeing felons are

commonplace, the Court reasoned, the "highly predictable" consequence of such an omission would be recurrent constitutional violations.  *Id.*

In *Connick v. Thompson*, the Supreme Court tested the *Canton*'s hypothesis.  There, a wrongfully convicted plaintiff sought to impose § 1983 liability on the New Orleans District Attorney for failing to train prosecutors on their *Brady* obligations with respect to specific types of evidence.  The Court rejected the claim, holding that this failure did "not fall within the narrow range of *Canton*'s hypothesized single-incident liability."  *Id.* at 64.  That was because the District Attorney's prosecutors already understood *Brady*'s general rule and the alleged deficiencies concerned merely *Brady*'s application to "the specific scenario related to the violation."  *Id.* at 67.  That degree of "nuance," the Court concluded, "simply cannot support an inference of deliberate indifference."  *Id.*

Like *Connick*, Ms. Peña's single-incident theory suffers from the same flaw.  For Ms. Peña does not contend that LCBP officers are devoid of baseline training concerning the use of force or otherwise interacting with civilians.  Rather, Ms. Peña faults the City for not providing an additional block of training addressing the intersection of mental-health crises and police encounters.  This should-have-done-better argument mirrors the "nuanced" training gap rejected in *Connick*.  So, like the *Connick* court, this Court will reject that argument here. The Court concludes that the record does not support a finding that LCBP officers had, as described in *Connick*, an "utter lack of an ability to cope with constitutional situations" involving persons experiencing mental-health crises.  *See id.*  Ms. Peña's single-incident theory cannot proceed.  The Court will enter judgment on Count II for the City Defendants.

B

Turning to Count IV, Ms. Peña alleges that Officer Arnold, directly, and the City of Lancaster and Chief Berkihiser, derivatively, are liable under § 1983 for denying Mr. Muñoz medical care following the shooting. *See generally City of Revere v. Mass. Gen. Hosp*., 463 U.S. 239, 244 (1983). To survive summary judgment on such a claim, the record must sufficiently demonstrate an underlying Fourteenth Amendment denial-of-medical-care claim, *i.e.*, (1) the existence of a serious medical need; (2) conduct by City officials—whether acts or omissions—constituting deliberate indifference to that need; and (3) a causal relationship between the indifference and the resulting harm. *See Smith v. Gransden*, 553 Fed. Appx. 173, 177 (3d Cir. 2014) (unpublished) (citing *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Miller v. City of Phila.,* 174 F.3d 368, 374 n. 5 (3d Cir.1999)). After so demonstrating, and to advance her derivative claims, Ms. Peña must adduce sufficient evidence showing the City's liability under *Monell* and the Chief's independent "supervisory liability," *see A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Detention Ctr*., 372 F.3d 572, 586 (3d Cir. 2004).

1

To begin, the City Defendants—similar to their attack on Count II—first contest the existence of any underlying constitutional violation. They maintain that Officer Arnold cannot be held liable for an unconstitutional denial of medical care because no reasonable jury could find that he acted with deliberate indifference with respect to Mr. Muñoz's medical needs. *See* Br. in Supp. Of City Defs.' Mot. for Summ. J. at 19-20, ECF No. 112-2. Importantly, deliberate indifference, in this context, exists where an official, aware of a serious medical need, delays or denies access to medical care for non-medical reasons. *Smith v. Gransden*, 553 F. App'x 173, 177 (3d Cir. 2014) (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).

In further support of their argument, and relying on Officer Arnold's body-worn-camera footage, the City Defendants emphasize that Officer Arnold summoned emergency medical services within one minute of the shooting and was then "taken" from the scene roughly a minute later. *See* Br. in Supp. Of City Defs.' Mot. for Summ. J. at 19-20, ECF No. 112-2. Ms. Peña, in response, counters with the testimony of her medical expert, Dr. David Friedman, who opines that Mr. Muñoz remained alive for several minutes after the shooting and that prompt first aid from Officer Arnold or other first responders could have prolonged his life. *See* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 13-14, ECF No. 124 (citing PSOF ¶¶ 106-11). From this evidence, Ms. Peña contends that a jury could reasonably conclude that a radio call for EMS, without more, does not preclude a finding of deliberate indifference.

The question thus presented to the Court then is whether the mere act of requesting professional medical assistance necessarily precludes denial-of-medical-care liability, or whether a jury may deem an officer deliberately indifferent when he requests medical support but declines to render even minimal first aid that might prolong life. The Court concludes that a prompt request for medical aid, while relevant, does not foreclose a finding of deliberate indifference as a matter of law, *see Heeter v. Bowers*, 99 F.4th 900, 917 (6th Cir. 2024) (recognizing that an officer's prompt request for medical aid does not automatically defeat a deliberate-indifference claim when additional lifesaving measures were practicable), and that the adequacy of Officer Arnold's response is clearly a question for trial.

2

So, with a potentially viable underlying constitutional violation, the Court must analyze City's liability for the alleged denial of medical care under the *Monell* framework previously discussed. Like her approach to Count II, Ms. Peña invokes both a policy-and-custom theory and

a failure-to-train and failure-to-supervise theory.  First, and as to the policy-and-custom theory, Ms. Peña finds fault with LCBP's emergency-response policy, which apparently demands no more than for providing first aid and requesting emergency services.  *See* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 14-15, ECF No. 124.  The policy, the Court is told, prescribes no standards for the nature, timing, or supervision of care and is silent on how to handle a mental-health crisis.  *Id*.  Even accepting these shortcomings as true, however, the Court concludes that the policy is clearly facially lawful, and that the absence of more detailed guidance in the emergency-response policy is not, without more, unconstitutional.  *See Hightower v. City of Phila.*, 130 F.4th 352, 356 (3d Cir. 2025) ("Lack of a policy is not a policy."); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).  Consequently, Ms. Peña must also prove deliberate indifference to sustain this theory.

Anticipating this, the City Defendants—through a unified challenge to both Ms. Peña's policy-and-custom theory and failure-and-inadequacy theory—maintain that no evidence of deliberate indifference exists.  More specifically, they insist that no evidence exists supporting a pattern of similar constitutional violations.  Ms. Peña, in response, counters with four prior federal suits accusing LCBP officers of both causing injuries through excessive force—arm-twisting, kicking, and face-first takedowns—and then withholding obvious medical care.  *See* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 16, ECF No. 124 (citing PSOF ¶¶ 227-30).  Although close, when viewed in the light most favorable to Ms. Peña, such evidence could sustain a finding of a similar pattern of mishandling post-force medical treatment, thus satisfying the pattern

requirement of the deliberate-indifference standard. *See Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). The City Defendants' argument, at this stage, fails. Count IV will proceed to trial.[2]

C

The Court now turns to Count V, which initially asserted a claim for "negligent hiring, training, supervision, and monitoring" against the City of Lancaster, Lancaster County (who has since been dismissed from this action), and Chief Jarrad Berkihiser. *See* Compl. at 16, ECF No. 1. At the Rule 12(c) stage, the Court construed the count as asserting a § 1983 claim and dismissed the "hiring" theory for failure to state a claim. *See Pena v. City of Lancaster*, 690 F. Supp. 3d 494, 502 (E.D. Pa. 2023). The Court then allowed the remaining portion of the claim against the City of Lancaster and Chief Berkihiser to proceed. *Id.* Importantly, in her opposition brief, Ms. Peña now concedes that Count V's *Monell* theory duplicates the excessive-force theory already presented in Count II. *See* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 19, ECF No. 124. So, the Court's holding as to the City in Count II also applies to Count V. And the derivative liability claim against Chief Berkihiser also necessarily fails. Judgment on Count V will therefore be entered in favor of Chief Berkihiser and the City.

---

[2]    Count IV also seeks to impose supervisory liability on Chief Berkihiser for the alleged denial of medical care. The City Defendants have not moved for summary judgment on Count IV as to Chief Berkihiser. They assert that the Court previously "dismissed" the claim against the Chief at the motion for judgment on the pleadings stage. *See* Br. in Supp. of City Defs.' Mot. for Summ. J. at 19 n.13, ECF No. 112-2. The Plaintiff responds that the Court made no such ruling. Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 16, ECF No. 124. The City Defendants do not address the Plaintiff's point in their reply brief. After reviewing the Court's previous rulings, the Court clearly did not dismiss the denial-of-medical-care claim against Chief Berkihiser or otherwise enter a judgment on that claim at any prior stage. Because the City Defendants do not currently challenge this aspect of the denial-of-medical-care claim in the present motion, the supervisory-liability theory against the Chief will also proceed to trial.

D

The Court next considers the City Defendants' argument against Count VI, which asserts battery claim against Officer Arnold. They contend that the claim fails because any "battery" was privileged because, under Pennsylvania law, "[p]olice officers are privileged to commit a battery pursuant to a lawful arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (citing *Edwards v. City of Phila.*, 860 F.2d 568, 572 (3d Cir.1988)). To this, Ms. Peña responds by pointing out that "privilege is negated by the use of excessive force." *See id.* Yet since the Court previously concluded that Officer Arnold's use of force was not unreasonable, her argument clearly fails. *See also O'Keefe v. Lehigh Univ.*, No. 23-1235, 2024 WL 138578, at *1 (3d Cir. Jan. 12, 2024) ("The test for determining whether that force is excessive is the same as in the Fourth Amendment context."). The Court will therefore enter judgment on Count VI.

E

At issue next is the City Defendants challenge to Count VII, which advances a wrongful-death cause of action under 42 Pa. Cons. Stat. § 8301 against Officer Arnold and Chief Berkihiser. In Pennsylvania, such an action is derivative of a cognizable underlying tort that produced the decedent's fatal injury. *See Simmons v. Simpson House, Inc.*, 259 F. Supp. 3d 200, 209 (E.D. Pa. 2017) (citing *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 741 (3d Cir. 2004)). Here, the Court observes that the operative complaint alleges no state-law tort attributable to Chief Berkihiser. Lacking that predicate, the claim against him cannot proceed. Accordingly, the Court will enter judgment in Chief Berkihiser's favor on Count VII. Relatedly, since Court has concluded that the underlying battery claim against Officer Arnold cannot proceed, the Court will also enter judgment in his favor on the wrongful-death claim.

F

Count IX, a failure-to-accommodate claim brought under Title II of the Americans with Disabilities Act ("ADA"), is the next target of the City Defendants' motion.  To sustain a claim under the ADA, Ms. Peña must offer evidence satisfying four elements: (1) Mr. Muñoz was a qualified individual; (2) who had a disability; (3) who was excluded from participation in, or denied the benefits of, the services, programs, or activities of a public entity—or was otherwise subjected to discrimination by that entity; and (4) such exclusion or discrimination occurred by reason of his disability. *See Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).  The City Defendants advance several arguments attacking each of the different elements in turn.

1

First, the City Defendants assert that Ms. Peña has failed to establish the third element because Officer Arnold faced an "on-the-street" exigency that, in their view, categorically exempts the entire encounter from the ADA.  *See* Br. in Supp. of Mot. for Summ. J. at 29, ECF No. 112-2. This argument lacks merit.  The Third Circuit has expressly declined to recognize such a blanket exemption in the case of *Haberle v. Troxell*, 885 F.3d 170, 181 n.11 (3d Cir. 2018) (["I]n the *future*, we may need to consider whether and under what circumstances it is reasonable to require police officers to make accommodations during an arrest when they face an exigent threat.") (emphasis added).  Following that guidance, this Court declines to create such an exemption today.

2

Second, the City Defendants argue that Mr. Muñoz's assault is an intervening cause that breaks the causal chain required to establish the fourth element.  But that argument also lacks merit. For the Third Circuit has already rejected this "superseding cause" defense under the ADA.

*See Furgess v. Penn. Dep't of Corrections*, 933 F.3d 285, 291 (3d Cir. 2019). To satisfy the fourth element, a plaintiff need only produce evidence that permits a reasonable jury to conclude that the disability was a "but-for cause" of the alleged harm. *See Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023). The record clearly supplies such evidence here.

3

Finally, the City Defendants argue that Ms. Peña failed to offer evidence sufficient to sustain an award of compensatory damages under the ADA. As to this argument, they are supported by the law. To collect compensatory damages under the ADA, a plaintiff must show "intentional discrimination." *See Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (citing S.*H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013)). To prove intentional discrimination, a plaintiff must in turn show at least "deliberate indifference," which, in this context, requires both "'(1) *knowledge* that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge.'" *Haberle*, 885 F.3d at 181 (quoting *S.H. ex rel. Durrell*, 729 F.3d at 265) (emphasis added).

Here, Ms. Peña has failed to offer evidence proving knowledge, which, as the Third Circuit has recognized, may be show either by "a failure to adequately respond to a pattern of past occurrences of [like] injuries," or by showing that the risk of "cognizable harm was so great and so obvious." *Haberle*, 885 F.3d at 181 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136-37 (3d Cir. 2001)). To start, Ms. Peña has offered no evidence to suggest that the LCBP has ever mishandled a prior mental-health crisis producing a comparable injury. So, she has no pattern. *Cf.*, *e.g.*, *Haberle v. Borough of Nazareth*, 936 F.3d 138, 141-42 (3d Cir. 2019).

Second, the remainder of Ms. Peña's proof comes down to these three sources: (1) the fact that Chief Berkihiser, an International Association of Chiefs of Police member, was generally

19

aware of the existence of the Association's 2018 model policy on mental-health crises; (2) Dr. Bazzi's opinion that individuals in crisis often carry knives for perceived self-defense; and (3) Mr. Dubin's opinion that police shootings of persons with mental illness are "common and well-documented." Pl.'s Mem. of L. in Opp'n to Defs.' Mot. for Summ. J. at 30-31, ECF No. 124.  But viewing all of the evidence in the light most favorable to Ms. Peña, it still does not sustain an inference that Lancaster City officials actually knew that their policies posed a substantial risk of violating federally protected rights.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (recognizing that the "knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware").

Indeed, the Third Circuit has already rejected an almost identical theory in *Haberle v. Troxell*, 885 F.3d 171, 182 (3d Cir. 2018).  There, the plaintiff cited unadopted guidelines that the municipality itself drafted for encounters with mentally distressed persons to prove obviousness, *i.e.*, to impute knowledge.  *See id.*  The Third Circuit, however, deemed such evidence insufficient, holding that "a municipality cannot be found deliberately indifferent merely for considering but not yet adopting new policies or amendments to old ones."  *Id.*  The Court went on to conclude that merely falling below "nationally recognized standards" does render the risk of an ADA violation "so patently obvious" that liability may attach in the absence of a prior pattern.  *Id.* at 182-83.

Here, Ms. Peña's evidence likewise attempts to do just that.  She relies on the Chief's general awareness of national model policies, Dr. Bazzi's testimony that such individuals may often carry knives, and Mr. Dubin's assertion that more appropriate standards exist at the national level, to establish obviousness.  But such evidence—at most—simply proves that the LCBP's

policies fell below national standards.  The Court in *Haberle* made it clear that such below-national-standards evidence, without more, does not amount to deliberate indifference.  *Id.* at 182.  Therefore, Ms. Peña's claim for compensatory damages under Count IX cannot survive.

G

So, that brings the Court to Count X, which asserts Ms. Peña's intentional-infliction-of-emotional-distress claim against Officer Arnold for the shooting death of her son.  To prevail, Ms. Peña must establish four elements: (1) conduct that is extreme and outrageous; (2) conduct committed intentionally or with reckless disregard; (3) a causal connection between that conduct and the plaintiff's emotional distress; and (4) distress so severe that no reasonable person could be expected to endure it.  *See Suero v. Watkins*, No. 5:13-CV-7181, 2016 WL 8716667, at *11 (E.D. Pa. Feb. 12, 2016) (quoting *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979)).  The City Defendants contend that, to the extent Officer Arnold employed force in self-defense, such conduct does not meet the extreme and outrageous standard as a matter of law.  The Court agrees.  Nothing about the lawful conduct of Officer Arnold in the present case could be characterized as sufficiently "extreme and outrageous" to support a claim for intentional infliction of emotional distress under Pennsylvania law.  *See also Mills v. City of Harrisburg*, 350 Fed. Appx. 770, 774 (3d Cir. 2009); *Estate of Paone v. Plymouth Twp.*, No. 2:22-CV-02178-JDW, 2024 WL 5107592, at *7 (E.D. Pa. Dec. 13, 2024).  The Court will enter judgment in favor of the City Defendants on Count X.

H

Finally, Count XI asserts Ms. Peña's wrongful-detention claim under 42 U.S.C. § 1983.  The City Defendants contend that the record lacks evidence supporting either an underlying constitutional violation or any municipal policy or custom cognizable under *Monell v. Department*

21

*of Social Services*, 436 U.S. 658 (1978).  The Court disagrees.  First, a credibility question clearly exists as to whether Ms. Peña was seized without probable cause in violation of the Fourth Amendment.  *See generally Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.").  On the one hand, the City Defendants rely on Officer Windlebleck's testimony that Ms. Peña "grabbed [his] rifle" and struck him—an account that, if credited, could establish probable cause.  Windlebleck Dep. 235-36, ECF No. 125-6.  But contrary to that, there is Officer Mazzante's testimony that Ms. Peña was merely "invited" to accompany the officers to the station, that no probable cause existed, and that she was not detained, but willingly present.  *See* Mazzante Dep. 36-41, ECF No. 122-7.  Clearly, whether Ms. Peña was wrongfully detained, accompanied the officers voluntarily, or arrested with probable cause, based on this evidence, cannot be resolved as a matter of law and must be resolved by the trier of fact.

Likewise, Ms. Peña has provided sufficient evidence from which a reasonable jury could find an entrenched municipal custom of detaining witnesses, without probable cause, solely to secure their statements.  Officer Ruiz, in fact, testified that transporting witnesses to the police station and holding them until detectives arrive is LCBP's "custom or … practice."  Ruiz Dep. at 98, ECF No. 125-4.  Furthermore, Ms. Peña offers several prior lawsuits, each similarly alleging that several LCBP officers detained individuals without probable cause.  *See* PSOF at 94, ECF No. 120.  Against that backdrop, the Court concludes that genuine disputes of material fact remain as to both the constitutionality of Ms. Peña's detention and the existence of the municipal custom underpinning it.  So, the City Defendants' motion for summary judgment on Count XI is therefore denied.

III

For the reasons set forth above, the City Defendants' motion is granted with respect to Counts II, V, VI, VII, and X.  Compensatory damages under Count IX are barred.  As to all other counts—Counts IV and XI—the motion is denied.  The City Defendants may renew their objection to a punitive-damages instruction at trial.  An appropriate order shall follow.